**Preston A. OCHSNER, Petitioner,**

v.

**Victoria V. OCHSNER, Respondent**

No. 14-0638

Supreme Court of Texas.

Argued November 2, 2015

Opinion Delivered: June 24, 2016

Bruce R. Steffler, Bruce R. Steffler, P.C., Michelle Stratton, Smyser Kaplan & Veselka, LLP, William B. Connolly, William Leslie Shireman, Connolly & Shireman LLP, Houston, TX, Stephanie F. Cagniart, Thomas R. Phillips, Baker Botts L.L.P., Austin, TX, for Petitioner.

Bobby Lee Warren, Jr., Eni U.S. Operating Co. Inc., Houston, TX, Victoria Ochsner, Houston, TX, for Respondent.

Justice Willett delivered the opinion of the Court, in which Chief Justice Hecht, Justice Green, Justice Guzman, Justice Lehrmann, Justice Devine, and Justice Brown joined.

Children get only one childhood. Unfortunately, acrimony between divorced couples is common, and when those couples have children, Texas law commendably tries to blunt the impact of grown-ups' hostility. One key way to reduce parental bickering—and protect kids caught in the crossfire—is through a child-support order that specifies how the noncustodial parent is to provide financial support. If the order is violated, the Family Code provides enforcement options.

In this case, a child-support order required Preston Ochsner to make certain payments to his daughter's school, and when she switched schools, to make payments through a registry. Instead, Preston paid the new school directly, with payments totaling more than $20,000 beyond what the original order contemplated. After almost a decade under this arrangement, his ex-wife Victoria sued to recover the balance that was not paid through the registry.

The trial court held that the direct tuition payments more than satisfied Preston's child-support obligation. The court of appeals reversed, holding that failure to satisfy the payment particularities specified in the order meant the trial court could not consider payments that discharged the tuition obligation Victoria had incurred for their daughter's benefit.

We disagree. A trial court in a child-support *enforcement* proceeding (Family Code Chapter 157)—a wholly separate action from the initial child-support *order* proceeding (Family Code Chapter 154)—may consider evidence of direct payments like those that were undisputedly made here when confirming the amount of arrearages. Preston's direct tuition payments satisfied—indeed, *exceeded*—his child-support obligation. The trial court did not abuse its discretion in finding that the above-and-beyond support Preston provided via this amicable, efficient arrangement discharged his obligation. Accordingly, we reverse the court of appeals' judgment and render judgment for Preston.

## Factual background.

The pertinent facts are undisputed. Preston and Victoria Oschner divorced in December 2001, and the trial court entered a divorce decree that included a child-support order for their daughter. The order specified that Preston would pay Victoria $240 each month in two installments and would also pay $563 each month directly to Enron Kid's Center for their daughter's preschool. The order also stated that after the daughter stopped attending Enron, Preston was to pay Victoria $400 twice a month. However, the order required Preston to pay Victoria through a registry—the Harris County Child Support Office—and noted that failure to comply with this place and manner requirement "may result in the party not receiving credit for making the payment."

The Ochsners' daughter stopped attending the Enron center, and Preston continued to make monthly child-support payments of $240 per month directly to Victoria, as well as payments directly to various private schools rather than to Victoria via the registry. Victoria, however, was the parent contractually obliged to pay the tuition. It is undisputed that Preston paid a total amount of almost $80,000 towards the upbringing of his daughter—more than $20,000 above the total amount that the child-support order contemplated through the registry.

However, almost a decade after her daughter stopped attending Enron, Victoria brought a child-support enforcement action against Preston, arguing that he was in arrears and seeking a money judgment for the balance plus interest, attorney fees, and costs. The trial court found for Preston, holding that he had discharged his child-support obligation, in

part because the divorce decree did not contain decretal language ordering Preston to pay child support after the child stopped attending the Enron preschool. The court of appeals reversed, holding that the decree did order Preston to continue to make payments after the child left the Enron preschool. On remand, the trial court, presided over by the same able judge who rendered the divorce decree, once again found that Preston was not in arrears. A divided court of appeals reversed, holding that the trial court had impermissibly enforced a private agreement to modify a child-support order.[1] The court of appeals held that the trial court was barred from considering Preston's direct tuition payments when confirming the amount of arrearages.[2] This appeal followed.

## The Family Code directs a trial court in an enforcement proceeding to determine the amount of unmet child-support obligation, and in no way removes a court's discretion to consider direct tuition payments made outside the registry.

Various interrelated Family Code provisions dictate how courts calculate and confirm arrearages.

Section 157.263(b–1) provides:

In rendering a money judgment under this section, the Court may not reduce or modify the amount of child support arrearages but, in confirming the amount of arrearages, may allow a counterclaim or offset as provided by this title.[3]

Sections 157.008–.009 authorize an offset or credit in two circumstances, neither applicable here: (1) "the obligee voluntarily

---

1.  436 S.W.3d 378.

2.  *Id.* at 382.

3.  Tex. Fam. Code § 157.263(b–1).

relinquished to the obligor actual possession and control of a child" in excess of any court-ordered periods of possession, during which period the obligor provided actual support to the child,[4] or (2) the obligor's disability resulted in a lump-sum payment to the obligee as representative of the child.[5] In this case, it is uncontested that Victoria did not voluntarily relinquish actual possession and control of her daughter, nor has Preston become disabled. As we discuss below, these provisions do not alone exhaust a trial court's ability to consider evidence of an obligor's discharge of his child-support obligation in an enforcement proceeding.

Our interpretive focus is on section 157.263, the central provision of the child-support enforcement statute:

(a) If a motion for enforcement of child support requests a money judgment for arrearages, the court shall confirm the amount of arrearages and render one cumulative money judgment.

(b) A cumulative money judgment includes:

(1) unpaid child support not previously confirmed;

(2) the balance owed on previously confirmed arrearages or lump sum or retroactive support judgments;

(3) interest on the arrearages; and

(4) a statement that it is a cumulative judgment.[6]

"Where text is clear, text is determinative." [7] An "arrearage" is "[t]he quality, state, or condition of being behind in the payment of a debt or the discharge of an obligation." [8] Thus an arrearage in the child-support context occurs when an obligor has not satisfied his obligation. According to section 157.263, however, the trial court is not merely to "confirm the arrearages"; rather it must "confirm *the amount* of arrearages." [9] An "amount," in the realm of arrearage, is "a principal sum and the interest on it." [10] "Amount" therefore denotes a quantity that can be broken into fractions and taken in the aggregate.[11] The "amount of arrearages" refers to the quantity, taken in the aggregate, of that fraction of the child-support obligation that remains unmet. Finally, the verb "to confirm" means "to give *new* assurance of the truth or validity" of some state of affairs.[12]

4. *Id.* § 157.008(d).

5. *Id.* § 157.009. JUSTICE BOYD suggests that the Court relies on one of these offsets in rendering judgment for Preston. As we make clear here and below, we do not suggest that this offset provision is implicated in this case. Rather, a trial court that *enforces* a child-support order is not—because of that fact alone (and as both dissents imply)—*modifying* that order.

6. *Id.* § 157.263.

7. *Entergy Gulf States, Inc. v. Summers,* 282 S.W.3d 433, 437 (Tex.2009) (quoting *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999)).

8. BLACK'S LAW DICTIONARY (10th ed.2014).

9. TEX. FAM. CODE § 157.263 (emphasis added).

10. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip G. Gove ed.1961).

11. That "amount" denotes an aggregate quantity is clear from its ability to modify mass nouns as opposed to count nouns. *Compare* "we owe a great amount of deference to the legislature" *with* "we have deferred to the legislature on a great amount of occasions." The latter sentence is poorly formed, since "occasion" is a count noun, unlike "deference," which is a mass noun denoting a quantity whose constituent fractions can be taken in the aggregate. Similarly, a court can discern a fraction of unpaid child-support, and aggregate that sub-part, in confirming the amount of arrearages.

12. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (Philip G. Gove ed.1961) (emphasis added).

Thus a trial court instructed to "confirm the amount of arrearages" is to determine the *quantity* of the child-support obligation that the obligor has failed to meet.[13] The court that issued the support order in the first instance determined the total dollar value of the support obligation. The text of the enforcement statute indicates that the trial court must calculate which aggregated sub-fraction of this value stands unpaid.

JUSTICE BOYD states that a motion for enforcement must include the amount owed as provided in the order, because that amount provides the basis for determining the amount of arrearage. We fully acknowledge this statutory command. That section, entitled "Contents of Motion,"[14] provides:

A motion for enforcement of child support:

(1) must include the amount owed as provided in the order, the amount paid, and the amount of arrearages....[15]

This provision dictates that a court considering a motion for enforcement of a child-support obligation must consider the monetary sum owed—indeed, a sum that is provided in the order. However, looking at the rest of the sentence, it is clear that the statute requires a trial court in a child-support enforcement action to also take into account the "amount paid" and the "amount of arrearages." The "amount of arrearages," therefore, cannot be simply the "amount owed as provided in the order." These sums—as reflected in the Legislature's decision to separately refer to them—are distinct. One refers to the amount that a child-support order deems to be paid, and the other refers to the balance that a court in an enforcement proceeding finds to be an unmet obligation in an enforcement action.

Fealty to the clear meaning of the statutory text, then, indicates that the trial court may consider the obligor's regular and long-term payments of tuition that the obligee was obliged to make.

■ "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."[16] We look to the statutory scheme as a whole in order to establish the meaning of the arrearage provision, not to snippets taken in isolation.[17]

First, the Code gives a trial court in a Chapter 154 proceeding considerable discretion to dictate the manner of payment when it issues the initial child-support order.[18] Pursuant to federal law,[19] where a trial court orders income to be withheld

---

13. *See also Buzbee v. Buzbee*, 870 S.W.2d 335, 340 (Tex.App.–Waco 1994, no writ) (noting a "strictly arithmetic procedure: What the obligor owes less what the obligor has paid").

14. As the title suggests, this section relates to the nature and specificity of the contents of a motion for enforcement, as opposed to the mode of determining the amount of arrearages in the enforcement proceeding itself.

15. TEX. FAM. CODE § 157.002(b)(1).

16. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012).

17. *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 562 (Tex.2014) ("While we must consider the specific statutory language at issue, we must do so while looking to the statute as a whole, rather than as isolated provisions.") (citations omitted); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 167 (2012) ("The text must be construed as a whole.").

18. TEX. FAM. CODE § 154.003 (providing that periodic payments, lump-sum payments, annuity purchase, setting aside property, and any combination of these are all options).

19. 42 U.S.C. §§ 654a(e), 654b.

for child support, the trial court must order that these funds be "paid to the state disbursement unit of this state, or if appropriate, the state disbursement unit of another state." [20] But nothing in the statute requires that payments made voluntarily, as opposed to payments withheld from income, must be made through a state registry.

Second, the structure of the enforcement statute confirms the view that a trial court may consider direct payments that discharge the obligee's own obligation to provide the funds. Indeed, the trial court in a subsequent Chapter 157 enforcement suit presides over an entirely different proceeding from the one resulting in the issuance of the child-support order under Chapter 154. [21] The trial court in an enforcement action is to confirm the amount of arrearages as a finding of fact. Nothing in the statute suggests that the trial court can consider only payments made through the registry in determining the amount of child support that an obligor has paid, and thus the amount for which the obligor is in arrears. [22] The manner of payment that the original order specifies does not, as JUSTICE BOYD would have it, hamstring the enforcement court in determining the amount of arrearages. Rather, the statute contemplates that the trial court has discretion to consider direct payments either to the other parent or to a third party in deciding whether an arrearage exists.

Stated differently, nowhere does the Code indicate that the discretion of the court in a *Chapter 154* proceeding supplants the discretion of the court presiding over a *Chapter 157* proceeding. [23] Indeed, Chapter 157 specifically provides that a trial court can consider the payment record in calculating "cumulative arrearage over time," [24] and also notes that the court may consider such evidence "controverting the contents of a payment record" as the obligor decides to provide. [25] The trial court has discretion to consider a range of

**20.** TEX. FAM. CODE § 154.004(b).

**21.** *Id.* at chs. 154, 157. JUSTICE JOHNSON ignores this statutory distinction and focuses—almost entirely—on the language of the divorce decree. But our focus is properly on what the Legislature has written, and not exclusively on a trial court's order in an entirely distinct divorce proceeding. Where statutes are concerned, courts must be attentive to, and give effect to, purposeful statutory distinctions.

**22.** Victoria contends that because the *child-support order* states that failure to make support payments via the registry "may" bar the obligor from receiving credit for the payment, the *trial court* in the enforcement action is somehow bound by this language. This argument fails. First, it ignores the permissive connotation of "may"—the word does not mean "must." *See, e.g., Dallas Cty. Cmty. Coll. Dist. v. Bolton,* 185 S.W.3d 868, 874 (Tex.2005) (noting that "may" is interpreted to have a permissive meaning). More importantly, the trial court in the enforcement action must follow its statutory command and "confirm the amount of arrearages." The pertinent element of the support order, then, is the payment obligation it creates. The trial court in an enforcement action need not be blinkered and ignore evidence of payments made in a manner unspecified by the support order when it confirms the aggregate fraction of the child-support obligation that has not been discharged. Nowhere does the statute impose such a restriction on the court's discretion.

**23.** JUSTICE JOHNSON suggests that we are writing around the Code. However, the Code is clear, from both its text and its structure, that a trial court adjudicating a child-support enforcement proceeding (a separate proceeding from the one in which the child-support order was issued) is able to consider tuition payments—payments that discharged an obligation incurred by the obligee herself—in "confirming the amount of arrearages."

**24.** TEX. FAM. CODE § 157.162(c)(3).

**25.** *Id.* § 157.162(c–1).

evidence. The trial court must determine the quantity of the child-support obligation that is unmet—a fresh factual finding. And in making this determination, it may, in appropriate cases, consider tuition payments that discharge the obligee's own obligation to pay the child's school fees. JUSTICE BOYD would appear to limit a parent's ability to controvert the payment record as reflected in the registry to clerical errors, apparently believing that a direct payment of child support can never count as a payment under the decree if the decree specifies payments to the registry. But we see nothing in a common-sense reading of the Code that requires such a narrow construction of "payment record" under section 157.162 or "arrearage" under section 157.263.[26]

Victoria cites the statutory provision that a trial court "may not reduce or modify the amount of child support arrearages" except when the specifically enumerated offsets apply,[27] and contends an impermissible reduction or modification occurred here. The trial court committed no such error. The plain language of this provision means that a trial court in an enforcement action cannot alter the amount deemed payable in the original child-support order. But the trial court in an enforcement action is permitted to *consider* tuition payments made in a manner not specified in the order in confirming the amount of arrearages. On the one hand, the court could conclude, given the payments that were made, that the obligor has not satisfied the child-support obligation imposed by the original order. On the other hand, the court could conclude, as it did here, that under all the circumstances the obligor made thousands of dollars in direct support payments in excess of the amount the order required, and in doing so

satisfied the obligee's obligation. The court may consider such payments in determining the quantity, stated in the aggregate, of that fraction of the child support the obligor failed to meet.

■ An analysis of the pertinent parts of the Family Code, then, leads to the conclusion that in a child-support enforcement action, a trial court may consider the various payments made by the obligor, regardless of what precise manner an earlier court—presiding over a distinct proceeding—specified in the child-support order. This is not to say the obligor should flout the system. The statute requires the trial court to confirm the amount of arrearages, based on the amount the child-support order required the obligor to pay, and in light of various payments the court finds that the obligor made. There is no statutory requirement that child-support payments travel via registry, though the court that issued the support order thought it appropriate. The trial court in an enforcement action, therefore, may, in the appropriate case, consider the obligor's satisfaction of the obligee's tuition obligation in confirming the amount of arrearages.

**Our precedent forbids private arrangements that allow a child-support obligor to shirk his obligation, but that has not happened here.**

We have never held that a trial court, when adjudicating a child-support enforcement action, cannot consider evidence of direct payments that were not precisely compliant with the original support order. Rather, our cases have been limited to situations where child-support obligors have attempted to privately agree with the obligee to reduce—or indeed entirely elim-

26. *Id.* §§ 157.162, .263.

27. *Id.* § 157.263.

inate—the obligation. In those situations, the trial court cannot in a Chapter 157 proceeding enforce these private agreements, or rely on them to reduce the arrearages. But where the obligor has made direct payments, albeit to the school attended by the child and for which the child receives direct benefit, that satisfy an obligation to pay school tuition incurred by the obligee, the facts are materially different. On such facts, the trial court is permitted to consider direct payments when confirming the amount of arrearages.

In *Williams v. Patton*,[28] we held that former section 14.41(a) of the Family Code bars parents from settling claims for child-support arrearages.[29] In that case, Houson Williams was in arrears by over $9,000, and Patton initiated court proceedings to recover the unpaid money. While that proceeding was pending, Williams executed an agreement to pay $2,850 up-front and $325–$350 monthly thereafter.[30] As part of the proposed settlement agreement, he attempted to secure release from his child-support obligation in consideration for these payments.[31]

We held that the Family Code prohibits settlement agreements purporting to "prospectively modify[ ] court-ordered child support without court approval."[32] The Legislature requires courts to consider whether the proposed parental agreements serve the child's best interests—a recognition of the key tenet that child support is a

duty owed by a parent to a child, not a debt owed to the other parent.[33]

Our decision in *Williams* was guided by the acknowledgment that the obligee parent may suffer significant financial hardship following divorce and thus might be tempted to accept, for example, an offer of a lump-sum payment instead of the court-ordered regimen of payments even though over time the court-ordered scheme would provide more money towards the child's upbringing.[34] Our concern was the risk of private downward modification of child-support payments, either unilaterally or by "agreement," to shirk parental duty.

Today's case is not a suit brought to enforce a private agreement to modify a child-support order; it is a child-support enforcement action. The rule in *Williams* is not that the trial court can consider payments that the obligor contributed toward the child's upbringing only if they were made under the support order's precise terms. Rather, the trial court may consider these and decide whether—and how much of—the obligation has been discharged. The court may determine that the payments did not contribute to the satisfaction of the obligor's child-support obligation, or it could conclude that the obligor has satisfied his duty, as it did here. *Williams* does not bar a trial court in a child-support enforcement case from considering tuition payments such as these in confirming the amount of arrearages.[35]

**28.** 821 S.W.2d 141 (Tex.1991).

**29.** *Id.* at 143.

**30.** *Id.* at 142.

**31.** *Id.*

**32.** *Id.* at 143.

**33.** *Id.* at 144–45 (citing *Adair v. Martin*, 595 S.W.2d 513 (Tex.1980)).

**34.** *Id.* at 144 (citations omitted).

**35.** *See also* 436 S.W.3d 378, 384 (Christopher, J., dissenting) (noting that for the trial court to so hold "is not a reduction or a modification of Preston's child support obligations but instead is merely a finding by the court that Preston complied with his child support obligations").

Today's case is about *made* payments, not *missed* payments.

■ We have also highlighted the dangers of espousing doctrines that would allow an obligor to escape his obligation in ways that were not at issue in *Williams*.[36] In *Office of Attorney General of Texas v. Scholer*, a father signed paperwork that purported to terminate his parental rights in exchange for a release from his child-support obligation.[37] The mother, however, did not file the paperwork in court, meaning that the father was still one of the child's legal parents.[38] We held that the father's parental rights—and obligations—had not come to an end, and that estoppel cannot be used as an affirmative defense in child-support enforcement actions.[39] Where a parent fails to support a child, we do not "compromise the welfare of a child who is at the mercy of his parents' choices." [40] We again stated that child support is not a debt owed by one parent to the other,[41] and that "parents, regardless of their quarrels, iniquities, or mutual agreements, must nevertheless satisfy their duty to the child." [42] JUSTICE BOYD takes note that "[e]ven though [an arrangement may] reflect[ ] the parents' agreement, it is enforceable only as a judgment, and is "not enforceable as a contract." But we do not hold today that there was some kind of "contract" between Preston and Victoria. Rather, we merely observe that a court presiding over a child-support enforcement action may consider tuition payments made directly to a school—payments that discharged an obligation that the obligee herself incurred—when determining the amount of arrearages.

JUSTICE BOYD also contends that we are misreading *Scholer* because that decision limited affirmative defenses to those provided by statute. *Scholer* so held, rejecting the affirmative defense of estoppel.[43] But in an enforcement action the movant must still establish that an arrearage exists. We recognize today, as we did in *Scholer*, that the court hearing an enforcement action must "confirm the amount of arrearages" under section 157.263.[44] *Scholer* did not hold that a direct payment in lieu of a payment to a registry can never be considered in calculating the arrearage. *Scholer* does not foreclose a parent from averring, "I paid," when an enforcement action is brought against him. To hold otherwise would mean the movant would always win an enforcement action.

Preston Ochsner paid more than $78,000 towards his child's tuition. It is undisputed that he paid over $20,000 more than the divorce decree required—all of which contributed to his daughter's upbringing. But he did not pay the required installments through the registry. He has nonetheless covered the costs of schooling his daughter, a far cry from abdicating his parental responsibility. Thus our concerns in

---

36. *Office of Att'y Gen. of Tex. v. Scholer*, 403 S.W.3d 859 (Tex.2013).

37. *Id.* at 861.

38. *Id.*

39. *Id.* at 862.

40. *Id.* at 866.

41. *Office of Att'y Gen. of Tex. v. Scholer*, 403 S.W.3d 859, 866 (Tex.2013).

42. *Id.* In the sense that the trial court cannot just write off a child-support obligation, it does indeed "act[ ] as a mere scrivener." *Lewis v. Lewis*, 853 S.W.2d 850, 854 (Tex. App.–Houston [14th Dist.] 1993, no writ).

43. *Scholer*, 403 S.W.3d at 862–67.

44. *Id.* at 863.

*Williams* and *Scholer*—that private parental agreements, executed or otherwise, to reduce a child-support obligation will result in children being harmed—do not apply here. Trial courts may consider payments such as Preston's when they assess arrearages.[45]

Several courts of appeals have reached the same conclusion.[46] For example, in *In re C.S.*, a father urged the trial court to hold that the Office of the Attorney General was incorrect to have found him in arrears.[47] That finding was based on a six-year period during which the father voluntarily increased the payment amount, but did not make payments via the county clerk.[48] On appeal the court held that the trial court was permitted to consider these payments when confirming the amount of arrearages.[49] We agree.[50] Neither dissent in today's case cites decisional authority that a trial court, in a post-decree action to enforce child support or other post-decree proceeding, is categorically barred from considering direct payments that were not sent to the registry specified in the decree.

### Preston paid over $20,000 more than the original child-support order contemplated, and the trial court had discretion to consider this in confirming the amount of arrearage.

■ Our fear in *Williams* was that custodial parents facing financial stress might accept an obligor's offer for a portion of a child-support arrearage "in settlement of the entire amount due."[51] Of critical importance is the protection of monies available to fund the child's necessary expenses, including "food, clothing, education, and home environment."[52] The need to cover the costs of education, including tuition, therefore features prominently in the concern over the harm that downward negotiation of child support might inflict upon a child.[53] Here, Pres-

---

**45.** As noted above, an enforcement proceeding is distinct from an action to modify a child-support order. Thus, if a trial court takes regular tuition payments into account when it confirms the amount of arrearages, it is not impermissibly modifying the child-support order.

**46.** *In re C.S.*, No. 11–12–00294–CV, 2014 WL 972310, at *4 (Tex.App.–Eastland Mar. 6, 2014, no pet.) (mem.op.); *In re J.C.T.*, No. 05–12–01290–CV, 2014 WL 3778909 (Tex.App.–Dallas 2014, pet. pending); *Higgins v. Higgins*, No. 05–98–02014–CV, 2000 WL 1264636, at *3–4 (Tex.App.–Dallas Sept. 7, 2000, no pet.) (not designated for publication); *Buzbee v. Buzbee*, 870 S.W.2d 335, 339 (Tex.App.–Waco 1994, no writ); *Niles v. Rothwell*, 793 S.W.2d 77, 79 (Tex.App.–Eastland 1990, no writ).

**47.** 2014 WL 972310, at *1.

**48.** *Id.*

**49.** *Id.* at *4.

**50.** Victoria makes much of a supposed distinction between payments the obligor makes directly to the obligee, and payments made indirectly to the obligee, for example, by paying tuition. This is not a relevant distinction. There is no reason why a trial court should be barred from considering tuition payments that relieved the obligee's burden to pay them when the court confirms the amount of arrearages. *See also Higgins*, 2000 WL 1264636, at *3–4 (noting that the trial court can consider direct payments made to third parties on behalf of the obligee in confirming the amount of arrearages, notwithstanding a registry payment requirement in the child-support order).

**51.** *Williams v. Patton*, 821 S.W.2d 141, 144 (Tex.1991).

**52.** *Id.* at 145.

**53.** Indeed, the Family Code provides that a court can order the payment of child support past the child's 18th birthday when the child is enrolled "on a full-time basis in a private secondary school in a program leading toward a high school diploma." Tex. Fam. Code § 154.002. The statutory guidelines mention

ton was paying down the tuition obligation that Victoria incurred for their daughter. Such payment does not implicate our concern that private agreements concerning child-support arrangements might harm the child, and the trial court was correct to consider it in confirming the amount of arrearages. Covering a cost that plainly benefits the child and that reduces the financial burden on the obligee is a fact a trial court may consider in a child-support enforcement proceeding. An amicable arrangement that reduces the financial pressures on the former spouse is the opposite of what the Court feared in *Williams*.[54]

That Preston made payments in order to discharge Victoria's obligation to pay their daughter's tuition distinguishes this case from *Chenault v. Banks*,[55] upon which the court of appeals heavily relied. The court of appeals construed *Chenault* to mean that a trial court confirming the amount of arrearages simply cannot consider any obligor payments that are not 100 percent compliant with the support order.[56] In *Chenault* the obligor made a tuition payment, just for a single year, and no evidence showed that the payment was the obligee's obligation.[57] Thus the *Chenault* court of appeals held that the trial court could not reduce the arrearage amount, reasoning that the private arrangement allowed the obligor to shirk his monthly obligation and contributed to the financial pressures that weighed upon the obligee.[58]

The facts in *Chenault* are different from those in this case, since here by relieving some of the obligee's duties to provide for their daughter's education—relief that was ongoing, as opposed to irregular—the direct payment of tuition furthered the child's interests. *Chenault* stands for the proposition that the "trial court's child support calculations must be based on the payment evidence presented, not the trial court's assessment of what is fair or reasonable."[59] There is no reason, even under the court of appeals' own logic in *Chenault*, why the trial court here could not have considered evidence of Preston's regular and direct tuition payments in confirming the amount of arrearages.

Neither law nor logic limits the trial court to the registry record. In confirming the alleged arrearage, the court was authorized to credit testimony and supporting documentary evidence.

**The dissent incorrectly looks only to the original child-support order—a decree issued in a proceeding governed by an entirely different chapter of the Family Code.**

JUSTICE JOHNSON contends that our analysis is inconsistent with section 157.216 of the Family Code under which each failure to make a child-support payment warrants final judgment for payment of the balance. Our analysis, though, focuses on section 157.263, governing the "amount of arrearages," and for the reasons given above, judgment against Preston is not warranted

the relevance of "special or extraordinary educational ... expenses" to child-support orders. *Id.* § 154.123. *See also In re Marriage of Grossnickle*, 115 S.W.3d 238, 247 (Tex. App.–Texarkana 2003, no pet.) (noting that contribution to tuition is a valid type of child support).

54. 821 S.W.2d at 144.

55. 296 S.W.3d 186 (Tex.App.–Houston [14th Dist.] 2009, no pet.).

56. 436 S.W.3d at 383.

57. *Chenault*, 296 S.W.3d at 188–89.

58. *Id.*

59. *Id.* at 190.

because there were no "arrearages." Preston owed no child support, having paid the tuition obligation his ex-wife incurred for their daughter.

◾ JUSTICE JOHNSON also urges that Preston's payments to the Enron day care center and other tuition payments were not child support under the explicit terms of the divorce decree. We disagree with such a counter-intuitive reading of the decree. Under the heading "Child Support," the decree requires Preston to pay Victoria "child support in the amount of $240 per month," until the earliest of several events, including when "the child no longer attends Enron Kid's Center day care." At that point, the child-support obligation was to increase to $800 per month. However, under the heading "Payment of Day Care," Preston was separately obliged to pay $563 per month to the Enron Kid's Center. The common-sense reading of the two provisions, taken together, is that the Enron preschool tuition, unambiguously, was a form of child support. After the child left preschool, the general child-support obligation increased, by almost the exact amount previously dedicated to the preschool tuition, to cover other child-care expenses—expenses that could of course include other tuition payments as the child progressed in her schooling. *Even if* we strictly focus on the divorce decree, then, we conclude that the trial court did enforce the prior judgment by finding that Preston had fully discharged his child-support obligation under that order's unambiguous terms.

Finally, JUSTICE JOHNSON claims that our decision will promote gamesmanship between former spouses, accusing the Court of green-lighting emotion-filled swearing contests. This concern is inherently highly speculative, and nowhere does the Code suggest that courts must focus on second-guessing whether their judgments will en-courage or discourage parties from raising "he-said she-said" arguments in an enforcement proceeding. Indeed, gamesmanship can work both ways, particularly in divorce- and custody-related matters, and trial courts are capable of ferreting it out. A trial court may well conclude that an "agreed" arrangement forced a struggling parent's hand and diminished the support benefiting the child, or otherwise harmed the child's best interest. Or a trial court may decide the opposite. These are fact-bound inquiries, and trial courts are competent to make case-by-case findings. Here, Victoria waited nearly a decade to sue for over $50,000 plus interest, attorney fees, and costs, despite Preston's having paid almost $80,000 towards their daughter's tuition—a fact that renders the dissent's fear of gamesmanship misplaced (or at least misdirected).

\* \* \*

Our decision today should be confined to the facts presented. It should not be read to hold that tuition payments always qualify as child support. Further, it should not be read to encourage spouses to make direct payments and thereby bypass the registry or other payment mechanisms set forth in the divorce decree. At a minimum such behavior may needlessly complicate proceedings. It carries risks regarding matters of proof, and under different circumstances a trial court might well be within its discretion in refusing to consider such payments. But for the reasons discussed, in today's case Preston's direct payments discharged his child-support obligation.

Navigating divorce is an adult responsibility, and Texas family law laudably aims to reduce marital strife. Parents need not seek court intervention to bless each and every tuition payment where it satisfies the other parent's school fee obligation or

otherwise clearly serves a child's best interests. This divorce decree did not bar the trial court from concluding that Preston Ochsner's direct tuition payments—non-registry payments to which Victoria assented—satisfied his child-support obligation. He was not attempting to reduce the amount he owed. Indeed, he paid more than $20,000 above the total amount contemplated in the support order, and in doing so discharged an obligation that Victoria had incurred on behalf of their daughter. The trial court did not abuse its discretion in finding that he made all his court-ordered payments.

Accordingly, we reverse the court of appeals' judgment and render judgment for Preston Ochsner.

Justice Guzman filed a concurring opinion, in which Justice Lehrmann joined.

Justice Johnson filed a dissenting opinion, in which Justice Boyd joined.

Justice Boyd filed a dissenting opinion, in which Justice Johnson joined.

JUSTICE GUZMAN, joined by JUSTICE LEHRMANN, concurring.

The Court, applying a proper construction of the statute and an appropriate standard of review, holds admissible evidence supports the trial court's conclusion that Preston Ochsner discharged his child-support obligation. I fully concur with the Court's analysis and reasoning. I write separately only to emphasize that (1) the trial court had discretion to accept proof of Preston's direct payments under section 157.162(c–1) of the Family Code, (2) the result in this unexceptionally unique case is amply supported by the record evidence, and (3) obligors who fail to discharge their child-support obligations by the court-ordered method do so at their own peril.

Unlike *Office of Attorney General of Texas v. Scholer*[1] and the child-support-enforcement defenses discussed in section 157.008, this case is not about excusing nonpayment or crediting an overpayment, both of which implicate a modification of the amount of child-support arrearages.[2] The issue is the trial court's authority to count support payments not made through the registry in determining whether and to what extent an arrearage exists. JUSTICE BOYD would hold direct payments can never discharge a support obligation if the support order requires payment to a registry,[3] as it must always do.[4] But JUSTICE BOYD's position cannot be squared with the language in chapter 157 of the Family Code, which recognizes that direct payments are not uncommon[5] and the trial court may consider them in determining whether an arrearage exists.[6] For purposes of determining the existence and

1. 403 S.W.3d 859 (Tex.2013).

2. TEX. FAM. CODE §§ 157.008, .263(b)(1).

3. *Post* at 745 (BOYD, J., dissenting).

4. TEX. FAM. CODE § 154.004(a) ("The court shall order the payment of child support to the state disbursement unit as provided by Chapter 234.").

5. Direct payments are of such common practice that the Texas Attorney General provides an "Affidavit of Direct Payments" by which the non-custodial parent can document child and medical support payments "made directly to the custodial parent (in any form)." *See* https://texasattorneygeneral.gov/files/cs/1A007ne.pdf (last visited June 23, 2016). A similar form for the same purposes is available to the custodial parent. https://texasattorneygeneral.gov/files/cs/1A007ce.pdf (last visited June 23, 2016). Excluded from the form are any payments made through a county registry or the state disbursement unit.

6. TEX. FAM. CODE §§ 157.162(c), (c–1), .266(a)(2), (b).

amount of arrearages, chapter 157 permits, but does not require, trial courts to count direct payments. Whether the evidence establishes a direct payment or not is a different question, which the trial court must determine based on the evidence presented and the context of each particular case, including the language in the child-support order. This case may be "messy"[7] and "enshrouded in family law trappings,"[8] as JUSTICE BOYD and JUSTICE JOHNSON lament, but not unusually so. Though all child-support disputes ultimately turn on their own peculiar facts, the outcome in this case derives from the application of the statute as written, according meaning to each word chosen by the Legislature and significance to the words the Legislature purposefully omitted.[9]

Under section 157.162(c) of the Family Code, a copy of "a payment record" is admissible to show whether payments were made.[10] The statute does not define or delimit the term "a payment record,"[11] and subsection (c–1) expressly permits the respondent to offer evidence controverting a payment record offered as proof of an arrearage.[12] Subsections (c) and (c–1) are rules of admissibility that authorize the trial court to accept evidence bearing on payment history as necessary to confirm the amount of child-support arrearages.[13] Subsections (c) and (c–1) imbue the trial court with the authority to consider evidence of payment, as distinguished from a counterclaim or an offset claim.[14] The trial court's decision to admit or exclude evidence bearing on payment is reviewed for

7. *Post* at 739–40 (BOYD, J., dissenting).

8. *Post* at 733 (JOHNSON, J., dissenting).

9. *See TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex.2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen.").

10. TEX. FAM. CODE § 157.162(c).

11. *Compare id.* § 157.002(b)(3) (permitting movant to attach "a record of child support payments maintained by the Title IV–D registry or a local registry"), *with id.* § 157.162(c) ("[t]he movant may attach to the motion a copy of a payment record" and "a payment record" attached "as authorized by [the] subsection ... is admissible"); *cf. also id.* §§ 101.018(4) (defining local registry as maintaining "official child support payment records"), 234.001(d) ("A certified child support payment record produced by the state disbursement unit is admissible as evidence of the truth of the information contained in the record and does not require further authentication or verification."), 234.009 (defining an "official record of a payment"), 234.0091 (governing disputes about discrepancies between "the record of child support payments

maintained by the [state disbursement] unit" and "the payment records maintained by the obligor or obligee"). The legislative history accompanying the 2011 amendment rewriting and dividing former section 157.162(c) into current subsections (c) and (c–1) further affirms that "a payment record" was not intended to be limited to an official registry record of payment. *Compare* Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 1674, 82d Leg., R.S. (Apr. 15, 2011) (engrossed) (proposed amendment of 157.162(c) limited "a payment record" to those records maintained by the state disbursement unit or a local registry), *with* Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 1674 82d Leg., R.S. (Apr. 27, 2011) (enrolled) (discussing the amendment as it was subsequently enacted and presently appears in the statute).

12. *See* TEX. FAM. CODE § 157.162(c–1).

13. *See id.* § 157.263 (requiring trial court to confirm the amount of arrearages and render one cumulative money judgment, if the movant requests a money judgment).

14. For example, section 157.008 authorizes a counterclaim or offset against a period of nonpayment if actual support was furnished during a period of voluntary relinquishment, which is distinct from allowing proof of actu-

abuse of discretion,[15] so there is no guarantee—as the decree in this case plainly stated—that the trial court will allow evidence of payment other than in the method set out in the child-support order.[16]

While the amount of child support cannot be reduced without a modification of the child-support order,[17] crediting evidence that child support was paid directly to the obligee, rather than through a registry, is not a modification of the amount of child support owed so long as the trial court's child-support payment calculations do not operate to reduce the obligation and are based on the evidence presented rather than "the trial court's assessment of what is fair or reasonable."[18] A trial court does not abuse its discretion "if it bases its decision on conflicting evidence and some evidence supports its decision."[19] "A trial court does, however, abuse its discretion when its decision is contrary to the only permissible view of the evidence."[20] Here, Victoria Ochsner submitted the

child-support registry's payment record to establish an arrearage. As permitted by section 157.162(c–1), Preston presented controverting evidence that he discharged his child-support obligations via direct payments to Victoria's designee. The trial court's determination that Preston satisfied his child-support obligation is supported by a permissible view of the evidence.[21] Accordingly, the trial court acted within its discretion in reconciling the evidence and weighing the credibility of the witnesses.

In determining the existence of an arrearage and calculation of interest, the issue is whether the obligor discharged his obligation to pay the amount of child support ordered, which requires a comparison of the "amount owed as provided in the order" with "the amount paid."[22] Proof of actual payment is germane to confirmation of an arrearage, while the issue JUSTICE BOYD identifies—global satisfaction of the

---

al payment to controvert a claim of nonpayment. *See id.* § 157.008.

**15.** *See In re A.S.G.,* 345 S.W.3d 443, 449 (Tex.App.–San Antonio 2011, no pet.); *In re R.J.P.,* 179 S.W.3d 181, 184 (Tex.App.–Houston [14th Dist.] 2005, no pet.) ("Questions concerning the admission and exclusion of evidence are reviewed under an abuse of discretion standard."); *see also Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990).

**16.** The decree admonishes: "Failure of a party to make child support payments to the place and in the manner required by a Court Order may result in the party not receiving credit for making the payment."

**17.** *See* TEX. FAM. CODE § 157.263(b–1); *see also Chenault v. Banks,* 296 S.W.3d 186, 189–90 (Tex.App.–Houston [14th Dist.] 2009, no pet.). Although the enforcement action was filed prior to the effective date of section 157.262(b–1), the applicable version of the statute is not materially different. Accordingly, I cite the current version of the statute for convenience.

**18.** *In re A.L.S.,* 338 S.W.3d 59, 66 (Tex.App.– Houston [14th Dist.] 2011, pet. denied).

**19.** *In re Barber,* 982 S.W.2d 364, 366 (Tex. 1998); *see In re A.L.S.,* 338 S.W.3d at 66 (evaluating conflicting child-support-payment evidence and finding no abuse of discretion where some evidence supported the amount of confirmed arrearages).

**20.** *In re Barber,* 982 S.W.2d at 366.

**21.** The evidence is adequately detailed in the Court's opinion; accordingly, in the interest of brevity, I do not repeat it here.

**22.** *See* TEX. FAM. CODE § 157.002(b)(1) (required contents of the motion for enforcement). The manner and timeliness of payment may affect the calculation of interest, but do not alter the fact of payment. *See* TEX. FAM. CODE §§ 154.003 (describing "manner of payment" the court may order as any combination of periodic payments, lump-sum payment, an annuity purchase, and setting aside of property), 157.266 (if payments are not made through a registry, a child-support payment is delinquent for interest-accrual pur-

order's requirements—implicates the penalty of contempt.[23] The distinction between the two is evident when comparing the language employed in the pertinent enforcement statutes:

- "[a] motion for enforcement of child support ... must include the *amount owed* as provided in the order, the *amount paid,* and the *amount of arrearages*";[24]

- "if contempt is requested, [the motion for enforcement] must include the *portion of the order allegedly violated* ";[25]

- "[t]he court retains jurisdiction to render a contempt order *for failure to comply with the child support order* " if enforcement is timely requested;[26]

- "[t]he court retains jurisdiction *to confirm the total amount of child support arrearages* and render a cumulative money judgment" if enforcement is timely requested;[27]

- "the court shall confirm *the amount of arrearages* and render one cumulative money judgment";[28]

- "[a] cumulative money judgment includes ... *unpaid child support*";[29] and

- "the court may not reduce or modify *the amount of child support arrearages.*"[30]

Furthermore, even though "[t]he court shall order the payment of child support to the state disbursement unit as provided by Chapter 234,"[31] a payment is not delinquent even "if payments are not made through a registry" so long as the payment is timely received by "the obligee or entity specified in the order."[32]

Consideration of all the statute's provisions requires that words not be isolated from the broader context. JUSTICE BOYD's analysis fails to afford meaning to words specifically identifying the portion of the support order at issue in determining the amount of arrearages.[33] The notion that a court is statutorily prohibited from considering direct payments to the obligee in satisfaction of the support obligation is simply unsupported by the plain language of the governing statutes and at odds with the custom and practice in our child-support system.[34]

As a final thought, I write to underscore that parents promote the best interests of their children by fulfilling their child-support obligations and making payments in precise conformity with the decree to minimize disputes and costly court battles. Nevertheless, I recognize that, like this

poses if not received by the obligee within 31 days of the date stated in the order).

23. *Post* at 742 (BOYD, J., dissenting) ("[A] court hearing a motion to enforce a child-support order must measure the obligor's performance against the order's requirements....").

24. TEX. FAM. CODE § 157.002(b)(1) (emphases added).

25. *Id.* § 157.002(b)(2) (emphasis added).

26. *Id.* § 157.005(a) (emphasis added).

27. *Id.* § 157.005(b) (emphasis added).

28. *Id.* § 157.263(a) (emphasis added).

29. *Id.* § 157.263(b)(1) (emphasis added).

30. *Id.* § 157.263(b–1) (emphasis added).

31. *Id.* § 154.004(a).

32. *Id.* § 157.266(a)(2).

33. *Post* at 739–40, 746 n.5 (BOYD, J., dissenting) (relying on statutory references to child-support amounts "provided in the order" and "previously ordered" and the trial court's discretion under Family Code section 154.001 to prescribe "the manner" of support parents must provide).

34. *See supra* note 5.

case, situations exist where parents agree to accept direct payments, and in those instances, the trial court has discretion to weigh evidence in determining the amount of child support that has been paid and whether a child-support obligation has been fulfilled. With these points of clarification, I join the Court's opinion and judgment.

## JUSTICE JOHNSON, joined by JUSTICE BOYD, dissenting.

This case is enshrouded in family law trappings, but at bottom it is about construing a court judgment—in this instance a divorce decree. In construing decrees we apply the same rules that apply in construing other court judgments—or at least we have said that we do. *Hagen v. Hagen*, 282 S.W.3d 899, 901 (Tex.2009). These rules include construing the decree or judgment as a whole, harmonizing and giving effect to all its language, and if the decree or judgment is unambiguous, adhering to and enforcing its language. *Id.* In my view, the Court does not follow these principles. As a result, there are no consequences to Preston Ochsner for failing to comply with unambiguous child-support-payment provisions in the unchallenged, underlying 2001 decree. The Court's decision will at least colorably legitimize claims by other child-support obligors to the effect that benefits they have provided for their children qualify as support payments, even though the governing decrees unambiguously provide otherwise. And just as happened here, enforcement hearings regarding those claims will almost invariably be swearing contests with emotional overlays in which the obligor testifies that the obligee agreed the benefits provided would be in lieu of or count against child-support payments ordered to be paid to the obligee, but the obligee testifies that there was no such agreement. Those results cannot possibly be in the best interests of the children, obligors, or obligees involved. For the reasons set out herein, I respectfully dissent. I also join JUSTICE BOYD's well reasoned dissent.

Preston Ochsner was petitioner in the divorce action underlying this appeal. Represented by counsel, he approved the Final Decree of Divorce as to form and content. Victoria Ochsner, the respondent and a non-lawyer acting *pro se* (she later attended law school and became licensed to practice law), likewise approved it as to form and content. The decree is forty-one pages long, detailed, and appoints the Ochsners as joint managing conservators of their then-three-year-old child. It contains initialed handwritten interlineations, indicating that the parties were careful to assure the decree reflected their agreement and intent. The decree authorizes some flexibility: certain provisions can be modified without court approval if the parties are in agreement. For example, it provides that

- the child is not to be removed from Harris County for the purpose of changing the primary residence of the child unless the decree is modified by further order of the court of continuing jurisdiction, "*or by written agreement signed by the parties and filed with the Court*";

- Preston and Victoria have discrete periods of possession of the child, with the added specification in three different places that each will also have possession "[*a*]*t all times mutually agreeable between the parties.*"

(emphasis added). But the decree does not extend flexibility to the provisions requiring Preston to make child-support payments. As to those provisions, the decree clearly spells out what is child support, how and when it is to be paid, to whom it

is to be paid, and the circumstances under which the support payments will change or terminate. Considered in context with the above-referenced provisions, and as discussed below, the decree prohibits the parties from modifying the support payment terms by agreement because it specifically says they may only be changed by court order.

Three sections of the decree are particularly relevant to the issue before us: *Child Support, Health Care,* and *Payment of Day Care.* The section entitled *Child Support* orders that Preston "*shall pay to VICTORIA V. OCHSNER* child support in the amount of $240.00 per month." (emphasis added). The support is ordered to be paid in installments of $120.00 each on the first and fifteenth of the month, until the earliest of one of the following events:

the child reaches the age of 18 years, provided that, if the child is fully enrolled in an accredited secondary school in a program leading toward a high school diploma, the periodic child support payments shall continue to be due and paid until the end of the school year in which the child graduates;

the child marries;

the child dies;

the child's disabilities are otherwise removed for general purposes;

the child is otherwise emancipated;

the child no longer attends Enron Kid's Center day care; or

further Order modifying this child support.

The next paragraph in the Child Support section addresses what was to happen after the child no longer attended Enron Kid's Center. It specifies that Preston then "*shall pay to VICTORIA V. OCHSNER* child support of $800.00 per month" (emphasis added) in installments of $400.00 on the first and fifteenth of the month until the earliest of one of the events on a list that mirrors the above list, except the provision as to Enron Kid's Center is omitted.

The Child Support section provides that if Preston becomes delinquent in his child support, notice may be given to his employer to withhold the support from his earnings. The decree defines delinquency as "when child support is in arrears in an amount equal to or greater than the total support due for one (1) month." It provides that amounts withheld by the employer from Preston's earnings and paid by the employer according to court order "shall constitute a *credit* against the child-support obligation," (emphasis added) not that they shall count "as" child support. Under the Family Code, there is a difference between the two. *See* TEX. FAM. CODE §§ 157.008–.009, .263(b–1). Further, the Child Support section of the decree does not allow the parties to modify its provisions either by (1) filing a written agreement signed by the parties with the court, as the decree authorizes for moving the child from Harris County, or (2) mutual agreement of the parties, as the decree authorizes as to possession of the child. Nor does it provide that payments not specified in the decree but nevertheless made for the benefit of the child or to discharge Victoria's obligations are either child support or allowable as a credit or offset against the periodic child-support payments to be made to Victoria. The decree simply and unambiguously provides that periodic child support in specified amounts is to be paid on specified days of each month *to* Victoria—not to Victoria *or someone to whom she is obligated for the child's education expenses*—until one of a list of contingencies occurs. None of the contingencies happened during the time period after the child no longer attended Enron Kid's Center.

Next, the section of the decree entitled *Health Insurance* sets out that "as additional child support," Preston is to "provide and pay for health insurance for the child for as long as child support is payable under this Order." That section is not at issue here, but, notably, it specifies that the provision of health insurance for the child is child support.

Finally, the section of the decree entitled *Payment of Day Care* orders Preston to "pay $563.00 per month to the Enron Kid's Center day care facility" as long as the child is enrolled there. The payments are not classified as child support, and the decree does not (1) contain language implying that the payments are child support, (2) allow the payments to offset or be credited toward child-support payments to be made to Victoria, or (3) reference day-care, tuition, or other education expenses incurred after the child no longer attended Enron Kid's Center.

Thus, two—and only two—obligations imposed on Preston by the decree are classified as child support: the specified payments to Victoria and health insurance. Preston was ordered to pay the child's tuition at Enron Kid's Center and did so, as well as commendably paying other educational expenses for the child's benefit that he was not ordered to pay and that were not classified as child support by the decree. And whether they were or were not so classified is important, both under the decree and the Family Code. The Court's basis for saying the expenditures were child support is that it is "counter-intuitive" to read the decree as not so classifying them. *Ante* at 728. The Court is relegated to "counter-intuitive" as its basis for deciding that the decree includes those payments because the plain language of the decree does not do so; as noted above, it does not even reference them. The Court's position is in direct contraven-

tion of the decree's language specifying what is child support—and necessarily by omission what is not—and its directing that specified semi-monthly child-support payments "shall" be made "to Victoria" until further Order of the court or occurrence of one of the other contingencies listed. Further, "counter-intuitive" is not the proper standard for reviewing and interpreting a decree. *See Hagen*, 282 S.W.3d at 901 ("If the decree is unambiguous, the Court must adhere to the literal language used."). Rather, it is language the Court uses to justify its (1) failing to properly apply a well-established standard of review, (2) countermanding specific language in the 2001 decree contrary to established precedent, and (3) writing around detailed provisions of the Family Code. *See, e.g., post* at 739–40 (Boyd, J., dissenting).

The Family Code precludes a trial court's reducing or modifying the amount of child-support arrearages when calculating and confirming the amount, but permits it to consider certain specific counterclaims, offsets, and credits. TEX. FAM. CODE §§ 157.008–.009, .263(b–1). As the Court notes, none of the allowable counterclaims, offsets, or credits apply here. *Ante* at 719–20. The Code protects—or at least tries to protect—support obligations in court orders from retroactive reduction and counterclaims, offsets, and credits other than those specified by the Code. Part of that protection is providing for affirmative, automatic relief to a support obligee: "A child support payment not timely made constitutes a final judgment for the amount due and owing, including interest as provided in this chapter." TEX. FAM. CODE § 157.261(a). Despite those statutory provisions, the validity of which are not challenged, the Court says that "in a child support enforcement action, a trial court may consider the various payments made by the obligor, regardless of what precise

manner an earlier court—presiding over a distinct proceeding—specified in the child support order." *Ante* at 723. That is a confounding statement when considered in light of both the Family Code's provisions as JUSTICE BOYD ably explains, post at 739–40 (Boyd, J., dissenting), and fundamental principles for interpreting judgments and decrees. *Hagen*, 282 S.W.3d at 901.

The Court attempts to justify its position by faulting the dissenting opinions for failing to cite decisions holding that courts hearing enforcement actions are categorically barred "from considering direct payments that were not sent to the registry specified in the decree." *Ante* at 726. The Court misrepresents my position. To be clear, my disagreement with the Court in this case is not over whether Preston sent support payments through the Harris County Child Support Office. Indeed, the parties interlined the decree to specifically authorize Preston to make child-support payments directly to Victoria. My disagreement with the Court is over its condoning Preston's failure to comply with a court order that clearly and unambiguously ordered him to pay specified amounts to Victoria or to return to the court for a modified order. After all, returning to the court for it to consider whether modification of the 2001 order was in the child's best interest was not only what the trial court ordered when it signed the decree, but was precisely what the Ochsners agreed to when they approved the 2001 decree as to form and content.

It is hard to understand the logic of the Court's position. Neither the decree's finality nor its validity as to the child-support provisions has been challenged. The Court says I ignore the distinctions between Chapters 154 and 157 of the Family Code and "focus[ ]—almost entirely—on the language of the divorce decree. But our focus is properly on what the Legisla-ture has written, and not exclusively on a trial court's order in an entirely distinct divorce proceeding." *Ante* at 722 n. 21. That is a fair statement as to both my focus and the Court's focus. However, the problem with the Court's focus is that this case is about a divorce decree that was ten years old when Victoria filed suit in 2011 and whose validity and conformance with the law has never been challenged. To repeat what I say elsewhere, Preston just does not like what he agreed to do, and what the trial court ordered him to do, as related to what he did. I cannot go along with Court's failing to abide by well-established principles for interpreting decrees.

The Family Code specifies that each untimely support payment an obligor such as Preston is ordered to make, but does not, constitutes a final judgment for that amount. TEX. FAM. CODE § 157.261(a). The only payments at issue here are those Preston was specifically ordered to make to Victoria after the child no longer attended Enron Kid's Center. Preston does not contend that Victoria is seeking to recover for payments he already made to her either directly or through the Harris County Child Support Office. The divorce decree *allowed* him to either pay through the registry or pay Victoria directly, but it also *required* him to do one or the other. Further, despite the Code's provision that each untimely support payment constitutes a judgment for the unpaid amount and the absence of a Code provision allowing payments to third parties to be counted as payments ordered to be made to Victoria or to be an offset or a credit against the judgments, the Court says that "[a] trial court in a child support *enforcement* proceeding (Family Code Chapter 157)—a wholly separate action from the initial child support *order* proceeding (Family Code Chapter 154)—may consider evidence of direct payments like those that were undisputedly made here when con-

firming the amount of arrearages." *Ante* at 718. By those statements, the Court effectively authorizes all courts hearing enforcement actions to disregard specific language in both the Family Code and underlying, final support orders.

The Court says that "[p]arents need not seek court intervention to bless each and every tuition payment where it satisfies the other parent's school fee obligation or otherwise clearly serves a child's best interests." *Ante* at 728–29. I agree, provided the child-support obligor does not seek to count the tuition payment as a child-support payment specifically ordered to be made otherwise. But the Court calls multiple payments of thousands of dollars child support in direct contravention of the divorce decree, which clearly and specifically directs that substitute performance for its mandate requiring child-support payments to Victoria is not authorized absent court approval. In my view, noncompliance with such a decree should entail consequences. And it almost did. At the enforcement hearing, the trial court initially, understandably, indicated that Preston was in contempt for not complying with the 2001 decree's support provisions. Lawyers for the Ochsners immediately clarified to the judge that contempt was not an issue being presented; the only issue presented was whether Victoria was entitled to a judgment, and if so, for how much.

The Court recognizes that the Family Code does not authorize payments such as those at issue here to offset or be credited toward child-support payments ordered by a prior decree. And because the decree here does not contemplate, reference, or authorize consideration of tuition or childcare payments other than those to Enron Kid's Center, there is no basis in the Code for allowing those payments to be used to adjust the total amount of unpaid periodic child-support payments specifically ordered by the decree. Nevertheless, the Court's decision effectively converts them into one of those—a *de facto* (1) retroactive modification of the decree, (2) offset against the support payments owed, or (3) credit against the support payments owed. The Court circumvents legislative provisions and our precedent by calling the payments to third parties child-support payments to Victoria, even though the decree undisputedly does not.

The Court not only legally errs, as outlined above and as JUSTICE BOYD sets out in his dissent, but the Court's decision also establishes bad precedent for at least two reasons. First, it dilutes the principle that provisions of final decrees should not be disregarded or substantively undermined in subsequent proceedings by *post hoc* determinations of what might have been better or more equitable provisions. Second, it diminishes the Family Code's attempts by both specific language in its individual parts and its construct as a whole to effect the opposite of what will flow from the Court's decision. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003) (requiring unambiguous statutory language to be interpreted according to its plain meaning and for statutes to be read as a whole to give effect to every part). The Code, in part, is designed to reduce friction in what are frequently highly acrimonious relationships. It does so in large part by minimizing opportunities for litigants to avoid complying with, and courts in subsequent proceedings to "wire around," child-support orders. Preston does not argue that any requirement regarding his child support—amount to be paid, payee, classification of what is child support, timing of payments, or manner of payment—was unclear. Nor does he contend that (1) the provisions of the 2001 decree were not in the best interest of the child, (2) Victoria, acting *pro se*, somehow

misled him and his lawyer in order to get them to agree to and approve the decree that does not categorize payments to Enron Kid's Center or any other child care or tuition payments as child support, (3) the decree provides that any such payments can be credited or offset against the support payments he was ordered to make to Victoria, or (4) the support order somehow violated the Family Code. He simply asserts that the court of appeals was wrong: his payments of school tuition and educational expenses after the child no longer attended Enron Kid's Center were child support under the decree, even though they were not referenced in the decree and in the face of the decree's providing that child support was to be paid to Victoria absent "further Order modifying this child support."

JUSTICE GUZMAN concurs to "emphasize that (1) the trial court had discretion to accept proof of Preston's direct payments under section 157.162(c–1) of the Family Code, (2) the result in this unexceptionally unique case is amply supported by the record evidence, and (3) obligors who fail to discharge their child-support obligations by the court-ordered method do so at their own peril." *Ante* at 729 (Guzman, J., concurring). I agree with the first point. The trial court had discretion to hear whatever evidence it chose to hear. But the evidence it heard did not prove that Preston complied with the 2001 decree. It proved conclusively that he did not. As to the second point, there are very few cases considered by appellate courts that do not involve unique facts or questions of law. But the real question here is about the *principle* involved, and although of paramount importance, it is not unique: will courts enforce final, lawful, statutorily compliant judgments, or will they not. Unfortunately, the principle the Court embraces is that courts need not do so—at least in family law matters. Even more

unfortunately, the Court does not give guidance as to when trial courts should and should not enforce clear language in final decrees, introducing more uncertainty into this type of case. *Compare Hagen*, 282 S.W.3d at 901. In regard to the third point, obligors who fail to discharge child-support obligations "by the court-ordered method" *should* be in peril. But the peril should be predictable. When the applicable principle is that courts need not, but may, enforce final judgments as they are written, there is no predictability based on law. Which is not to say that trial courts cannot exercise discretion in child-support matters. Undisputably they not only can, but must do so on a constant basis. And appellate courts must defer to proper exercises of discretion by trial courts. However, in my view, the trial court's ruling in this enforcement action directly conflicted with and failed to enforce unchallenged, unambiguous provisions of a prior judgment, and was an abuse of discretion.

Nothing precluded Preston from paying for his daughter's private schooling or enriching her life in other ways by exceeding the decree's support requirements. But neither did anything preclude him from seeking modification of the decree as to its child-support provisions, which the decree clearly required him to do, rather than simply not complying with its terms. If he had sought modification, the trial court may have classified his continuing payments for the child's school tuition and education expenses as child support and altered the amounts to be paid to Victoria. But neither the Code nor the decree allowed him to simply disregard the decree's explicit provisions. Nor did the Code or the decree allow the court hearing the subsequent enforcement proceeding to call Preston's payments to third parties child support and substantively credit or offset them against the child-support payments

ordered by the decree, or to thereby effectively retroactively amend the underlying order as to what was child support.

Certainty as to (1) the amounts to be paid as child support, (2) what counts as child support, (3) when support payments are to be made, and (4) to whom the payments are to be made, minimizes the friction inherent in support matters. The Court's decision will reduce certainty in those areas and open the door wider for gamesmanship where experience teaches gamesmanship abounds and conflicts regarding child support are more the rule than the exception. This decision can only invite more court proceedings in family law matters, to the detriment of all involved.

In my view, Victoria is entitled to a cumulative money judgment confirming the total of the child-support arrearages based on the serial, monthly final judgments effected by the Family Code for amounts ordered by the decree but not timely paid to her. *See* TEX. FAM. CODE § 157.261. I would affirm the judgment of the court of appeals.

JUSTICE BOYD, joined by JUSTICE JOHNSON, dissenting.

This is a messy case. Victoria Ochsner contends that her ex-husband, Preston Ochsner, failed to pay more than $55,000 that an agreed child-support order required him to pay to her through the Harris County Child Support Office. Although Preston admits that he did not make those payments, he contends that he complied with the child-support order by paying tuition to their daughter's private schools. The order did not permit Preston to satisfy his child-support obligation by making tuition payments, but he claims that Victoria agreed that he could make those payments instead of making the child-support payments to the Child Sup-

port Office as the order required. Victoria denies that they had any such agreement. She contends that although she could not afford to send their daughter to private school, she agreed to send her because Preston agreed to pay the tuition. But she claims she did not agree that he could pay the tuition *instead of* making the child-support payments as the order required. If Victoria is telling the truth, it would seem terribly unjust to allow Preston to avoid his child-support obligations. But if Preston is telling the truth, it would seem terribly unjust to make him pay the child support in addition to the tuition he has already paid.

The Court's opposing opinions identify two alternative ways the law could deal with these types of situations. The Court's approach, which allows courts hearing a motion to enforce a child-support order to give credit for payments that do not comply with the order, might permit parents to amicably and efficiently revise their court-ordered child-support obligations, but it would undoubtedly also foster more difficult swearing matches like this one. JUSTICE JOHNSON's approach, which would require courts hearing an enforcement motion to enforce the child-support order's terms as written, might avoid these kinds of messy cases, but it would also be less efficient and could result in unjust outcomes for parents who rely on an agreement they believed was best for their children.

Which alternative we might prefer, however, is irrelevant. The question before us is which alternative the Legislature has chosen. Based on the Texas Family Code's language and this Court's precedent construing that language, I agree with JUSTICE JOHNSON that the Legislature has chosen the second approach. With regard to the statute's language, I reach this conclusion because the Family Code:

— permits motions to enforce *provisions of a child-support order,* TEX. FAM. CODE § 154.001(a), (b), but does not permit motions to enforce a general obligation to support a child in a way the court hearing the enforcement motion may think best;

— neither requires nor permits the court hearing an enforcement motion to exercise "discretion" or to reconsider the child's "best interests," and in fact—in contrast to the provisions that govern the entry and modification of child-support orders—never mentions "discretion" or "best interests" in connection with enforcement proceedings at all, *id.* §§ 157.001–.426;

— requires parents to support their children *"in the manner specified* by the [child-support] order," *id.* § 154.001(a) (emphasis added);

— requires courts that hear child-support enforcement motions to determine arrearages based on the "amount owed *as provided in* the [child-support] order," *id.* § 157.002(b)(1) (emphasis added);

— requires a judgment for unpaid child support to include "interest on the arrearages," *id.* § 157.263(b)(3), and provides that such interest accrues when the obligor fails to timely make the payment to "the obligee or entity *specified in the order,* if payments are not made through a registry," *id.* § 157.266(a) (emphasis added);

— limits reimbursements for any overpayments to amounts based on payments *"previously ordered* by the court," *id.* § 157.008(e) (emphasis added); and

— permits a court or the Title IV–D agency to suspend government-issued licenses of an obligor who is three or more months' behind on payments, based on "the amount of arrearages owed *under the child support order,"* *id.* §§ 232.004, .005(a)(3) (emphasis added).

In short, the Code repeatedly and consistently recognizes that a court hearing a child-support enforcement motion must *enforce provisions of the child-support order,* not some alternative obligation that the parties agreed to or the enforcing court may find appropriate. Consistent with these provisions, this Court recently held that:

— a court hearing a motion to enforce a child-support order "may not *adjust arrearage amounts* outside of the statutorily mandated exceptions, offsets, and counterclaims," but "may evaluate evidence only to consider the listed factors and defenses, and nothing more," *Office of Attorney Gen. of Tex. v. Scholer,* 403 S.W.3d 859, 865–66 (Tex.2013) (emphasis added);

— "affirmative defenses that are not included in the statute, like estoppel, are . . . prohibited because they would require courts [hearing child-support enforcement motions] *to make discretionary determinations,"* *id.* at 865 (emphasis added); and

— "except for the very narrow circumstance recognized by law—the obligee's relinquishment of possession and the obligor's provision of support—[the obligor] may not rely on the other parent's actions to extinguish his support duty," *id.* at 867 (footnote omitted).

In light of the statute's language and our precedent construing that language, I join JUSTICE JOHNSON's dissenting opinion and add these additional remarks.

## I.

### The Family Code

Numerous detailed provisions of the Texas Family Code address the requirements for the entry, modification, and enforcement of a child-support order. These provisions describe the Legislature's chosen method for addressing disputes like the Ochsners', and whether we agree with the Legislature's choice or not, our only role is to apply that method. I conclude that the Family Code's provisions expressly and plainly prohibited the trial court from considering and counting Preston's tuition payments as child-support payments in this case, even if Victoria agreed that he could make those payments instead of the court-ordered child-support payments.

### A. Chapter 154: *Entry* of Child–Support Orders

The Family Code authorizes courts to "order either or both parents to support a child *in the manner specified by the order*." Tex. Fam. Code § 154.001(a) (emphasis added). When a court order specifies "the manner" in which a parent must support a child, the order is binding on that parent like any other court order, and the court "shall cause" that order to be "carried into execution." Tex. R. Civ. P. 308, 308a. Parents may agree on their respective child-support obligations, but their agreements are not controlling because the order protects the child's interests, not the interests of either parent. *See* Tex. Fam. Code § 154.124(b), (d). Before entering an agreed child-support order, the court must determine whether the parents' agreement "is in the child's best interest," and if it is not, the court must either ask the parents to submit a revised agreement or render its own order that protects the child's best interests. *Id.* § 154.124(d).

Here, the trial court entered a child-support order in accordance with the Ochsners' agreement only after finding that the order was in their daughter's best interests. The order requires Preston to make child-support payments, and as the Court acknowledges, "specifies *how* [Preston] is to provide financial support" by requiring him to "make payments through a registry." *Ante* at 718 (emphasis added). That order was binding on both Preston and Victoria, and they could not simply agree that one or both of them could ignore that order any more than their agreement could have dictated the order's requirements in the first place. With or without the parents' agreement, the order represented the trial court's findings of what was required to protect their daughter's best interests.

### B. Chapter 156: *Modification* of Child–Support Orders

The Code carefully protects a child-support order's substantive provisions, and permits changes only through a proper modification order. If one or both parents decide that a child-support order should be modified, they may file suit to modify the order. Tex. Fam. Code § 156.002(a). Only the court that has continuing, exclusive jurisdiction over matters involving the child—which is usually the same court that entered the final child-support order—may modify the child-support order. *Id.* §§ 155.001–.003. Here, neither Preston nor Victoria sought to modify the order that required Preston to pay child support through the Harris County Child Support Office. Instead, according to Preston, they simply agreed that he could pay their daughter's private-school tuition instead of paying child support "in the manner specified by the order." *Id.* § 154.001(a). But even if Preston's description of their agreement is true, the Family Code does not permit them to modify the order by

agreement. Only the "court with continuing, exclusive jurisdiction" can modify a child-support order. *Id.* § 156.001.

The Court appears to agree that parents cannot modify a child-support order by agreement and that a court hearing an enforcement motion cannot enforce such an agreement, but contends that "[t]oday's case is not [such a] suit." *Ante* at 724.[1] Instead, according to the Court, this is merely "a child-support enforcement action," *ante* at 724, and the court that heard the enforcement motion merely and permissibly considered Preston's tuition payments "in confirming the amount of arrearages," *ante* at 724. I agree this is indeed a "child support enforcement action," but an action to enforce what? Under the Code, it must be and is an action to enforce the child-support *order*. TEX. FAM. CODE §§ 157.001(a) (permitting motion "to enforce any provision of a temporary or final order rendered in a suit"), 157.001(b) (permitting court hearing enforcement motion to "enforce by contempt any provision of a temporary or final order"). And the order that Victoria asked

the court to enforce here did not require or permit Preston to support his child by making private-school tuition payments. By holding that the enforcement court could treat Preston's tuition payments as satisfaction of the child-support order's requirement that he make payments to Victoria through the Child Support Office, the Court necessarily holds that the enforcement court can either enforce a modified version of the child-support order or simply ignore the order's payment requirements. As discussed in the following section, a court hearing a motion to enforce a child-support order must measure the obligor's performance against the order's requirements, not against the court's or the parents' view of what the order should have required.

## C. Chapter 157: *Enforcement* of Child–Support Orders

An agreed child-support order is a court order and not merely an agreement between the parents. As a result, only the "court of continuing, exclusive jurisdiction" has authority to enforce it. TEX. FAM. CODE § 157.001(d).[2] Even though it reflects the

1. The Court actually appears to be of two minds as to whether a court that hears an enforcement motion can honor and enforce the parents' agreement to modify a child-support order. Responding to JUSTICE JOHNSON's concern that the Court's construction will promote "gamesmanship" between parents, the Court suggests that a court hearing an enforcement motion can consider the parents' "agreed arrangement" and conclude either that it should not be enforced because it "forced a struggling parent's hand and diminished the support benefiting the child, or otherwise harmed the child's best interest," or conclude that it should be enforced and "decide the opposite." *Ante* at 728. According to the Court, whether a court hearing a motion to enforce a child-support order should enforce the parents' agreement to modify that order presents "fact-bound inquiries, and trial courts are competent to make case-by-case findings." *Ante* at 728. The Court's reasoning thus ultimately concedes that an enforcing

court can credit payments that do not comply with a child-support order only by either modifying or ignoring the order it is required to enforce. In any event, the Family Code directly contradicts the Court's suggestion that an enforcing court can choose to enforce or not enforce an agreement to modify a child-support order on a "case-by-case" basis. Only the court that has continuing, exclusive jurisdiction can modify a child-support order, TEX. FAM. CODE § 156.001, and it may do so only in response to a proper motion to modify under section 156.002, only if the statutorily required grounds for modification are met, *id.* §§ 156.101(a), 156.401, and only after determining that "the modification is in the best interest of the child," *id.* § 156.402(a).

2. The Court notes that the enforcement motion in this case was "presided over by the same able judge who rendered the divorce decree," *ante* at 719, as if that somehow means the judge had greater discretion when

parents' agreement, it is enforceable only as a judgment, and is "not enforceable as a contract." *Id.* § 154.124(c).

A motion for enforcement "must include the amount owed *as provided in the order,*" because that amount provides the basis for determining the amount of arrearage. *Id.* § 157.002(b)(1) (emphasis added). The parent obligated to make the child-support payments can assert a variety of affirmative defenses, but the fact that the parents agreed to modify the child-support order—as Preston alleges here—is not one of them. *Id.* § 157.008(a) (permitting defense "that the obligee voluntarily relinquished to the obligor actual possession and control of a child"), (c) (permitting evidence that the obligor was unable to make the payments as a defense to contempt allegation). The parent who files the enforcement motion may attach a copy of a payment record to prove the dates and amounts of any payments, the amount of any accrued interest, the "cumulative arrearage over time," and "the cumulative arrearage as of the final date of the record." *Id.* § 157.162(c). The official payment records are those maintained by the local registry and the state disbursement unit. *Id.* § 234.009; *see id.* § 101.018 (defining "Local registry" as the "agency or public entity" that "maintains records of child support payments" and "maintains custody of official child support payment records"). The parent who is obligated to make the payments "may offer evidence controverting the contents of a payment record." *Id.* § 157.162(c–1).

The Court relies on these provisions to conclude that the court hearing the enforcement motion "has *discretion* to con-

sider a range of evidence" to "determine the quantity of the child support obligation that is unmet—a fresh factual finding," *ante* at 722–23 (emphasis added). Similarly, the Court asserts that "nowhere does the Code indicate that the discretion of the court in a *Chapter 154* proceeding supplants the discretion of the court presiding over a *Chapter 157* proceeding." *Ante* at 722. The problem with the Court's conclusion, however, is that nothing in the Code indicates that the court presiding over a Chapter 157 proceeding has any such "discretion" at all. To the contrary, unlike Chapter 154, Chapter 157 never mentions the word "discretion." As the Court itself explains, "Where statutes are concerned, courts must be attentive to, and give effect to, purposeful statutory distinctions." *Ante* at 722 n. 21. Yet the Court pays no attention to, and gives no effect to, the distinction between Chapter 154, which grants courts discretion when entering a child-support order, and Chapter 157, which never mentions the word discretion at all.

Thus, contrary to the Court's majority and concurring opinions, the Code does not grant courts hearing an enforcement motion "discretion to accept proof of … direct payments" when those payments do not comply with the child-support order. *See ante* at 729 (GUZMAN, J., concurring). Relying on *In re A.S.G.*, 345 S.W.3d 443, 449 (Tex.App.–San Antonio 2011, no pet.), and *In re R.J.P.*, 179 S.W.3d 181, 184 (Tex.App.–Houston [14th Dist.] 2005, no pet.), JUSTICE GUZMAN contends that the trial court's consideration of such "direct payments" is merely an evidentiary assess-

deciding the enforcement motion. Under the Code, however, the judge who rendered the divorce decree is typically the only judge who can hear the enforcement motion. *See* TEX. FAM. CODE § 157.001(d) (noting that the "court of continuing, exclusive jurisdiction" has au-

thority). Chapter 157's requirements governing enforcement motions and orders apply equally to those judges as to any other judge to whom continuing, exclusive jurisdiction may have been transferred.

ment that we must review under the abuse-of-discretion standard. *Ante* at 729–30 (GUZMAN, J., concurring). But no one here disputes that Preston made the tuition payments or the amount of such payments. With regard to the tuition payments, the trial court did not engage in "reconciling the evidence and weighing the credibility of the witnesses," *ante* at 731 (GUZMAN, J., concurring), because Victoria did not dispute that Preston made the tuition payments. Instead, Victoria disputed that the tuition payments satisfied the order's requirements. That dispute presents a legal issue, and a trial court abuses its discretion *"as to legal matters* when it acts without reference to guiding rules." *A.S.G.*, 345 S.W.3d at 449 (emphasis added) (citing *In re A.L.G.*, 229 S.W.3d 783, 784–85 (Tex.App.–San Antonio 2007,

no pet.)). The "guiding rules" here are the Code's provisions, which permit motions to enforce the provisions of a child-support order.

Under Chapter 157, it is the child-support order, and not the parents' agreement or the court's discretionary view of what the order should have required, that defines the "child-support obligation." The enforcement court, in other words, must determine the "cumulative arrearage" based on "the amount owed *as provided in the order.*" TEX. FAM. CODE § 157.002(b)(1) (emphasis added).[3] And although the Code permits evidence "controverting the *contents* of a payment record," *id.* § 157.162(c–1) (emphasis added), it does not permit evidence controverting "the *manner* specified by the order," *id.* § 154.001(a) (emphasis added).[4] If Pres-

**3.** JUSTICE GUZMAN suggests that the "amount owed as provided in the order" is not "germane to confirmation of an arrearage" and instead only "implicates the penalty of contempt." *Ante* at 731–32 (GUZMAN, J., concurring). Section 157.002(b)(1), however, applies to all motions for enforcement of child support, regardless of whether the motion requests the penalty of contempt. *Compare* TEX. FAM. CODE § 157.002(b)(1) (requiring all enforcement motions to "include the amount owed as provided in the order"), *with id.* § 157.002(b)(2) (requiring enforcement motions, "if contempt is requested," to "include the portion of the order allegedly violated"). More importantly, if the obligor's failure to "satisf[y] the child-support order's requirements," *ante* at 731–32 (GUZMAN, J., concurring), is enforceable by contempt, it is also necessarily a failure to pay that gives rise to the arrearages the court must calculate. *See id.* §§ 157.002(b)(1) (requiring enforcement motion to include "the amount owed as provided in the order, the amount paid, and the amount of arrearages"), 157.263(a), (b) (requiring enforcing court to "confirm the amount of arrearages and render one cumulative judgment" that includes "unpaid child support no previously confirmed").

**4.** The Court cites section 154.003 and suggests that the "manner of payment" refers only to whether the order requires periodic

payments, a lump-sum payment, annuity payments, or the distribution of property. *Ante* at 721 n. 18. Similarly, JUSTICE GUZMAN cites section 154.003 and suggests that the Code's reference to "the manner specified by the order" refers only to the "manner and timeliness" and not to the designated recipient. *Ante* at 731 n. 22 (GUZMAN, J., concurring). Reading section 154.003 with section 157.266, JUSTICE GUZMAN goes on to assert that the "manner and timeliness of payment may affect the calculation of interest, but do not alter the fact of payment." *Id.* This attempt to separate the "calculation of interest" from the "fact of payment" is illogical, however, because the two are necessarily intertwined: the Code requires an award of interest only on "arrearages." TEX. FAM. CODE § 157.263(b)(3) (requiring that judgment include "interest on the arrearages"). If the "manner specified by the order" governs the calculation of interest, it must also govern the determination of arrearages because interest only accrues on arrearages. If in fact the payments were timely made, no interest is due at all. Section 157.266 only further confirms that the child-support order's requirements as to whom the obligor must pay governs the enforcing court's determination of arrearages by providing that a "child support payment is delinquent for the purpose of accrual of interest" if the obligor fails to timely

ton had made payments to the Child Support Office as ordered but the Office's payment record did not correctly reflect those payments, he could submit evidence "controverting the contents of [the] payment record." *Id.* § 157.162(c–1); *see id.* § 234.0091(b) (allowing for administrative review of "an alleged discrepancy between the child support payment record provided by the state disbursement unit . . . and the payment records maintained by the obligor or obligee," and requiring "documentation of the alleged discrepancy, including a canceled check or other evidence of a payment or disbursement at issue"). But the Family Code does not permit him to controvert the child-support order itself.

Here, the trial court *ordered* Preston to make the payments to a registry, the Harris County Child Support Office. The trial court did not "merely think it appropriate" that Preston make the payments to Victoria through the Child Support Office, *ante* at 723; to the contrary, consistent with Preston's and Victoria's agreement, the court concluded that it was in the child's best interests to require Preston to make the payments in that manner, and it expressly ordered him to do so. "[A]s provided in the order," TEX. FAM. CODE § 157.002(b)(1), Preston was required to make child-support payments to Victoria through the Harris County Child Support Office, and the Code provides that the court hearing the enforcement motion must calculate the amount owed based on those payments. Thus, while the "structure of the enforcement statute" may indeed confirm "the view that a trial court may consider direct payments that discharge the obligee's own obligation to provide the funds," *ante* at 722, it confirms

that view only if those payments were made "as provided in the order," TEX. FAM. CODE § 157.002(b)(1). Otherwise, the payments that discharge the obligee's obligation do not discharge the obligor's obligation under the child-support order that is being enforced. The Court hearing the enforcement motion cannot consider payments that the obligor makes in a manner not "provided by the order" unless it either modifies or ignores the order, and the Code permits it to do neither.

The Court's construction to the contrary is unconvincing, primarily because the court that "issued the child support order in the first instance" did much more than simply "determine[ ] the total dollar value of the child support obligation." *Ante* at 721. Consistent with its duties under the Family Code, that court also found that Preston's agreement to support his daughter in a specific manner was in her best interests, and it ordered Preston to support her in that manner. *See* TEX. FAM. CODE §§ 154.001, .124(a)–(b). To "determine the *quantity* of the child support obligation that the obligor has failed to meet" (and thus "confirm the amount of arrearages"), *ante* at 721, the court hearing the enforcement motion could only consider the support Preston provided "in the manner specified" by the original order. And the court could "confirm the amount of arrearages" based only on "the amount owed as provided in the order." TEX. FAM. CODE § 157.002(b)(1). The Code permits the enforcement court to "confirm the amount" by which Preston "failed to meet" his obligation, but does not permit it to modify or alter the obligation itself.

make the payment to "the obligee or entity *specified in the order,* if payments are not made through the registry." *Id.* § 157.266(a) (emphasis added). Because the Code requires an award of interest when the obligor

fails to timely make the payments to the "obligee or entity specified in the order," an enforcing court cannot count a payment that is not made to the "obligee or entity specified in the order" when determining arrearages.

I am also unconvinced because the very same section of the Code provides, "In rendering a money judgment under this section, the court may not *reduce or modify* the amount of child support arrearages...." *Id.* § 157.263(b–1) (emphasis added). And although the Code expressly permits the court to "allow a counterclaim or offset as provided by this title," id. as the Court agrees, none of the counterclaims and offsets that the Code provides are applicable here.[5]

Ultimately, there is nothing in the Family Code that supports the Court's conclusion that the Code permits the court hearing the enforcement motion to enforce or reject the parents' agreement modifying the child-support order, or to consider payments not made "as provided by" the order in the absence of such an agreement, *even if the modification or the payments were in the child's best interests.* As mentioned, Chapter 154 of the Family Code requires the trial court that enters a child-support order to consider the child's "best interests." TEX. FAM. CODE § 154.124(b), (d). Similarly, Chapter 156, which governs suits to modify a child-support order, requires the court to consider whether "the modification is in the best interest of the child." *Id.* § 156.402(a). And Chapter 153, governing conservatorship, possession, and access, also states, "The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." *Id.* § 153.002. But Chapter 157, which governs motions to enforce a child-support

order, neither requires nor permits the court to consider the child's best interest. In fact, Chapter 157 never once uses the phrase "best interests" at all.[6] Instead, it requires the court to confirm the amount of arrearages based on the amount owed "as provided" in the child-support order, and enter a judgment based on that amount.

This does not mean that the Code ignores the child's best interests when a parent moves to enforce a child-support order. To the contrary, it protects the child's interests by requiring a court that enters or modifies a child-support order to weigh the best-interests evidence, by prohibiting the parents or any other court from altering the order except through the modification process, and by requiring an enforcement court to determine the arrearage based solely on "the amount owed as provided in the order," *id.* § 157.002(b)(1), and the payments made "in the manner specified by the order," *id.* § 154.001. The Legislature certainly could have authorized the enforcement court to retroactively approve the parents' agreement modifying the order or credit payments that failed to comply with the order when doing so is in the child's best interests. But it did not, and we overstep the limits of our authority when we judicially grant authority the Legislature has not granted.

## II.

### Precedents

Finally, I address the other Texas court decisions addressing this issue. As the

---

5. An obligor "who has provided actual support to the child during a time subject to an affirmative defense ... may request reimbursement for that support," but any such reimbursement is "limited to the amount of periodic payments *previously ordered by the court." Id.* § 157.008(d)–(e) (emphasis added).

6. Again, as the Court itself asserts, "Where statutes are concerned, courts must be attentive to, and give effect to, purposeful statutory distinctions." *Ante* at 722 n. 21. Yet the Court ignores the fact that Chapter 157, unlike Chapters 153, 154, and 156, never refers to the child's "best interests."

Court notes, a few Texas courts of appeals have held that a trial court hearing an enforcement motion can count payments the obligor made directly to the obligee or to a third party even though the order required payments to the court's registry or clerk. The Court only briefly describes the facts and holding in one of those cases, however, and never mentions the basis for that holding. What the Court does not explain is that these cases did not consider any of the Family Code's provisions at all, and instead relied solely on each other and on a "waiver" defense that we have since rejected.[7] These court of appeals decisions demonstrate how easily one incorrect decision can result in a string of incorrect decisions when this Court allows the first one to go uncorrected.

Although we have not expressly disapproved of these cases, we expressly rejected their reasoning in *Scholer*. Properly relying on the Family Code's provisions, we held in *Scholer* that "affirmative defenses that are not included in the statute, like estoppel, are ... prohibited because they would require courts [hearing child-support enforcement motions] to make *discretionary determinations*." *Id.* at 865 (emphasis added). We explained that the Code "limits obligors to a single affirmative defense [against a child-support enforcement motion], and a court *may not adjust arrearage amounts* outside of the statutorily mandated exceptions, offsets, and counterclaims," but instead "may evaluate evidence only to consider the listed factors and defenses, and nothing more." *Id.* at 865–66 (emphasis added). Further, we explained that a "parent's duty of support" is an obligation to benefit the child and not "a debt owed to the other parent," and thus "estoppel would be inappropriate." *Id.* at 866. We ulti-

---

7. This line of cases appears to begin with *Niles v. Rothwell*, 793 S.W.2d 77 (Tex.App.–Eastland 1990, no writ), in which the Eastland Court held that a court hearing an enforcement motion could count payments made directly to the obligee instead of to the court's registry as the child-support order required. *Id.* at 79. The *Niles* court never cited the Family Code to support its holding; instead, it simply reasoned that the obligee had waived her right to enforce the order by accepting the payments and that it would "be unfair" to hold otherwise. *Id.* Without considering the Code's provisions at all, the court simply concluded that the enforcement court "had the power to do what is in the best interest of the child and can do what is right, fair, and equitable." *Id.*

A few years later, the Waco Court again ignored the statute's language and relied only on *Niles* to hold that an enforcement court "was not limited to the registry record in determining how much child support [the obligor] had actually paid." *Buzbee v. Buzbee*, 870 S.W.2d 335, 339 (Tex.App.–Waco 1994, no writ) (citing *Niles*, 793 S.W.2d at 79). In 2000, again ignoring the statute's language and relying only on *Niles*, the Dallas Court held that the obligee's "acceptance of pay-

ments ... waived her right to have these payments made through the Dallas County Child Support Office." *Higgins v. Higgins*, No. 05–98–02014–CV, 2000 WL 1264636, at *4 (Tex.App.–Dallas Sept. 7, 2000, no pet.) (not designated for publication) (citing *Niles*, 793 S.W.2d at 79). Then, in 2014, the Eastland Court held that the trial court "may consider evidence of direct payments from the obligor to the obligee even when the divorce decree provides for the obligor to make payments through the court's registry." *In re C.S.*, No. 11–12–00294–CV, 2014 WL 972310, at *3 (Tex.App.–Eastland Mar. 6, 2014, no pet.) (mem.op.). Again, as support for this holding, the court cited not to the Family Code but solely to *Buzbee* and *Niles*. *Id.* (citing *Buzbee*, 870 S.W.2d at 339–40, and *Niles*, 793 S.W.2d at 79). And most recently, the Dallas Court again ignored the statute and relied solely on *C.S.* to hold that a "trial court may consider evidence of direct payments from the obligor to the obligee even when the divorce decree provides for the obligor to make payments through the court's registry." *In re J.C.T*, No. 05–12–01290–CV, 2014 WL 3778909, at *4 (Tex.App.–Dallas 2014, pet. denied) (mem.op.) (citing *C.S.*, 2014 WL 972310, at *4).

mately concluded, "But except for the very narrow circumstance recognized by law—the obligee's relinquishment of possession and the obligor's provision of support—[the obligor] may not rely on the other parent's actions to extinguish his support duty." *Id.* at 867 (footnote omitted).

The Court attempts to limit our holding in *Scholer* by asserting that our "concern" in that case was that "private parental agreements, executed or otherwise, to *reduce* child support obligations will result in children being harmed." *Ante* at 726 (emphasis added). The Court thus announces a new rule permitting enforcement courts to consider payments not made "in the manner specified by" or "as provided in" a child-support order as long as the obligor relies on those payments to prove that the noncompliant payments met or exceeded the total child-support obligation but not to reduce or modify the total obligation. *Ante* at 719–20. While this new rule may promote the Court's view of justice on a case-by-case basis, it will also effectively discourage obligors from ever doing more to support their children than a child-support order requires them to do. Under this rule, all obligors who have financially supported their children in any manner that the child-support order does not require can now claim a credit for child-support payments up to the amount of the unrequired support, and thus ensure that they never have to pay a penny more than the total amount the child-support order required. Maybe that is a good rule, or maybe it is a bad rule, but in either case it is not a rule that the Family Code's language or our decision in *Scholer* supports.

## III.

### Conclusion

If Preston and Victoria agreed that Preston would pay their daughter's pri-

vate-school tuition instead of making child-support payments as their agreed court order required, the court of appeals' judgment would seem to impose an unfair result on Preston. On the other hand, if Preston and Victoria did not reach such an agreement, the Court's judgment would seem to impose an unfair result on Victoria. But our view of fairness cannot dictate our decision here. Because the child-support order required Preston to make payments to Victoria through the Child Support Office, the court hearing the enforcement motion could not count his tuition payments towards his child-support obligation without either ignoring the order's requirements or enforcing an agreed modification of the order. The Texas Family Code expressly and plainly prohibits parents from modifying the child-support order by agreement and prohibits the court hearing the enforcement motion from modifying it by court order. Because I believe the Court errs by reversing the court of appeals' judgment, I respectfully dissent.