**Affirmed in Part, Reversed in Part, and Rendered in Part and Opinion filed April 16, 2024.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00762-CV

---

### WILLIAM LAVAN GRAVES, III, Appellant

### V.

### AMY KATHERINE GRAVES, Appellee

---

**On Appeal from the 261st District Court
Travis County, Texas
Trial Court Cause No. D-1-FM-17-004519**

---

### OPINION

Appellant William Lavan Graves, III ("William") appeals the trial court's final divorce decree terminating his marital union to appellee Amy Katherine Graves ("Amy"). In three issues, William argues the trial court abused its discretion when it (1) deviated from the standard possession order; (2) deviated from the child support guidelines; and (3) confirmed $61,625.00 in child-support arrearages. We reverse in part the trial court's determination of William's child-

support arrearage totaling $61,625.00 for the period between July 20, 2017, and January 1, 2020, and we render judgment in part that the arrearage is $52,625.00. We affirm the remainder of the judgment.

## I.  BACKGROUND[1]

William and Amy married in 2001 and have two children. On July 20, 2017, Amy filed for divorce against William, and William filed a counterpetition for divorce.

On June 22, 2022, trial began, and Amy and William testified. William requested the trial court to make findings of fact and conclusions of law. On July 18, 2022, the trial court signed a final decree of divorce and subsequently issued findings of facts and conclusions of law.

As to the parties' possession of their two minor children, the trial court entered an order that deviated from the standard possession order by providing each parent with two uninterrupted weeks of possession during the summer months, instead of thirty days of possession to be taken in one period or in two periods of at least seven days each. *See* Tex. Fam. Code Ann. § 153.312(b)(2)(A). The trial court also found that William's net resources were $9,200.00 per month and awarded Amy $2,125.00 in child support per month. Finally, the trial court confirmed William's arrearage of retroactive child support at $61,625.00 from the date of the filing of Amy's petition until January 1, 2020. This appeal followed.

## II.  STANDARD OF REVIEW

We review a trial court's ruling on possession, child support, and confirmation of arrearages for an abuse of discretion. *See Iliff v. Iliff*, 339 S.W.3d

---

[1] This case is before this court on transfer from the Third Court of Appeals in Austin, Texas, pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* Tex. Gov't Code. Ann. § 73.001.

74, 78 (Tex. 2011); *In re Roisman*, 651 S.W.3d 419, 440 (Tex. App.—Houston [1st Dist.] 2022, no pet.); *Iliff v. Iliff*, 339 S.W.3d 126, 133 (Tex. App.—Austin 2009), *aff'd*, 339 S.W.3d 74 (Tex. 2011). A trial court abuses its discretion when it rules without reference to guiding rules and principles or when its decision is unreasonable or arbitrary. *Transcor Astra Grp. S.A. v. Petrobras Am., Inc.*, 650 S.W.3d 462, 482 (Tex. 2022).

In this context, the abuse-of-discretion standard overlaps with traditional standards for reviewing the sufficiency of the evidence. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). Consequently, the legal and factual sufficiency of the evidence are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *A.S. v. Texas Dep't of Fam. & Protective Servs.*, 665 S.W.3d 786, 795 (Tex. App.—Austin 2023, no pet.). The reviewing court determines first "whether the trial court had sufficient information on which to exercise its discretion and, if so, whether the trial court erred in its application of discretion." *Id.*

A no-evidence challenge is a challenge to the legal sufficiency of the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 809–11 (Tex. 2005). Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true. *In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018). In conducting a legal-sufficiency review, the reviewing court cannot ignore undisputed evidence contrary to the finding, but it must otherwise assume the factfinder resolved disputed facts in favor of the finding. *Id.* at 630–31.

### III.   POSSESSION ORDER

In his first issue, William argues the trial court abused its discretion when it

entered a possession order that deviated from the standard possession order in the Family Code. William advances two arguments in support of this assertion: (1) the evidence was insufficient to show that a deviation from the standard possession order was in the children's best interest; and (2) the trial court's findings of fact and conclusions of law do not include an affirmative finding that deviating from the standard possession order was in the children's best interest.

## A. APPLICABLE LAW

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002. In cases where parents are appointed as joint-managing conservators, the Family Code provides a standard possession order ("SPO") to allocate the child's time between the parties. *See id.* §§ 153.312, 153.313, 153.316, 153.3171. There is a rebuttable presumption that the SPO in the Family Code is in the best interest of the child. *Id.* § 153.252(2).

In deviating from the SPO, the trial court may consider "(1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." *Id.* § 153.256. "In all cases in which possession . . . is contested and the possession . . . varies from the standard possession order, . . . on request by a party, the court shall state in writing the specific reasons for the variance from the standard order." *Id.* 153.258(a).

## B. ANALYSIS

Here, William requested findings of fact and conclusions of law in relevant part under Texas Rule of Civil Procedure 296. *See* Tex. R. Civ. P. 296 (referencing cases tried "without a jury"); *see, e.g.*, *Filla v. Filla*, No. 03-14-00502-CV, 2016

WL 4177236, at *2–3 (Tex. App.—Austin Aug. 5, 2016, pet. denied) (mem. op.) ("[W]e conclude that the trial court erred in failing to file findings and conclusions pursuant to rule 296 regarding its ruling on the parties' possession of and access to M.F."). Pursuant to William's request, the trial court did file findings of fact and conclusions of law, stating that William's "periods of possession comply with the [SPO] with a deviation as authorized by discretion of the court . . . ." The trial court, however, did not include in its findings the specific reasons for the deviation or specifically state that the deviation was in the children's best interest. *See* Tex. Fam. Code Ann. § 153.258(a).

On appeal, William argues that the trial court was required to make an affirmative finding that the deviation was in the children's best interest. However, we conclude that William did not preserve this argument for our review because he did not file a request for additional findings of fact and conclusions of law. *See* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 298; *see, e.g.*, *Villalpando v. Villalpando*, 480 S.W.3d 801, 810 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("The failure to request amended or additional findings or conclusions waives the right to complain on appeal about the trial court's failure to make the omitted findings or conclusions."); *Smith v. Abbott*, 311 S.W.3d 62, 73 (Tex. App.—Austin 2010, pet. denied) ("The district court filed its original findings and conclusions [and the] appellants did not file a request for additional or amended findings and conclusions . . . . Consequently, they did not preserve their complaint."); *see also, e.g.*, *Travis Settlement Home-Owners' Ass'n v. 71 Warehouse, LLC*, No. 03-23-00108-CV, 2024 WL 726251, at *5 (Tex. App.—Austin Feb. 22, 2024, no pet. h.) (mem. op.) ("Failure to request additional findings waives the right to complain on appeal about a presumed finding."); *Goodfellow v. Goodfellow*, No. 03-01-00633-CV, 2002 WL 31769028, at *7 (Tex. App.—Austin Dec. 12, 2002, no pet.) (mem.

op.) (concluding that appellant "cannot be heard to complain on appeal that the findings and conclusions are incomplete" because appellant did not make a timely request for additional findings and conclusions).

Nevertheless, even if the issue had been preserved, a failure to file findings does not require reversal if the record affirmatively demonstrates that the requesting party suffered no harm from the absence of the finding. *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996); *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989); *Filla*, 2016 WL 4177236, at *3. The general rule is that an appellant has been harmed if, under the circumstances of the case, he is forced to guess the reasons why the trial court ruled against him and therefore is prevented from properly presenting a case to the appellate court. *Tenery*, 932 S.W.2d at 30; *Filla*, 2016 WL 4177236, at *3.

In this case, Amy requested a deviation from the SPO on the sole basis that the requested summer-possession schedule was the schedule the parties previously used and agreed to for the five years since the divorce was filed. Amy testified that this schedule is what the girls wanted, and William acknowledged this assertion by Amy. At the end of trial, the trial court informed the parties that it was aware of the request for a deviation from the SPO. On appeal, William states that Amy's "only argument that such [deviation] is in the best interest of the children was that such deviation is what the parties had done since their separation." William then argues, without citation to authority, that this argument "does not meet the stringent best interest standard, nor does it even sufficiently make the argument that the expanded standard possession would negatively impact the routine or stability of the children." *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

6

Based on this record, William has not shown that he had to guess the trial court's reasoning and that he was prevented from properly presenting his case on appeal. *See Tenery*, 932 S.W.2d at 30; *see, e.g.*, *Filla*, 2016 WL 4177236, at \*3; *Cobb v. Cobb*, No. 03-14-00325-CV, 2016 WL 3136886, at \*4 (Tex. App.—Austin June 3, 2016, pet. denied) (mem. op.). We thus conclude the record affirmatively demonstrates that William suffered no harm from the absence of the finding. *See Tenery*, 932 S.W.2d at 30; *see, e.g.*, *Filla*, 2016 WL 4177236, at \*3. Finally, the deviation here would not constitute an abuse of discretion under the facts of this case. *See, e.g.*, *Randle v. Randle*, 700 S.W.2d 314, 317 (Tex. App.—Houston [1st Dist.] 1985, no writ) ("[T]he trial judge could reasonably have found that a modification allowing a stable and continuing routine for the child would be in the child's best interests.").

We overrule William's first issue.

## IV.   CHILD SUPPORT

In his second issue, William argues the trial court abused its discretion when it deviated from the child support guidelines and ordered him to pay the maximum standard child support despite insufficient evidence justifying the deviation.

### A.   APPLICABLE LAW

The trial court is required to calculate a parent's net resources for the purpose of determining child-support liability per the statutory guidelines. Tex. Fam. Code Ann. §§ 154.062(a), 154.125. Whenever feasible, this requires computing gross income on an annual basis and then recalculating to determine average monthly gross income. *Id.* § 154.061(a).

"Net resources" includes "interest [and] dividends" but not a "return of principal or capital." *Id.* § 154.062(b), (c); *Harrison v. Harrison*, No. 01-11-00639-

7

CV, 2013 WL 485787, at *3 n.1 (Tex. App.—Houston [1st Dist.] Feb. 7, 2013, no pet.) (mem. op.). The Family Code further provides that income from retirement accounts can be considered part of a parent's net resources, but only when it is actually received. Tex. Fam. Code Ann. § 154.062(b)(5); *see also, e.g.*, *Attanguile v. Attanguile*, 584 S.W.3d 163, 182 (Tex. App.—El Paso 2018, no pet.) ("Suhey has not cited any authority, nor are we aware of any, that authorize a court to consider funds held in an undistributed retirement account as qualifying as retirement income actually being received."). Finally, withdrawals from retirement accounts that are subject to the sole management, control, and disposition of one spouse can be considered by the trial court in its determination of net resources and that parent's child support obligation. *See* Tex. Fam. Code Ann. § 3.202(c) ("The community property subject to a spouse's sole or joint management, control, and disposition is subject to the liabilities incurred by the spouse before or during marriage."); *In re A.D.*, 73 S.W.3d 244, 248 (Tex. 2002) (characterizing child support as "a previously adjudicated liability" of the obligor); *see, e.g.*, *Koenig v. DeBerry*, No. 03-09-00252-CV, 2010 WL 1009170, at *4 (Tex. App.—Austin 2010, no pet.) (mem. op.) ("The district court thus properly considered evidence that Koenig had recently received $34,391.59 in income from cashing out his retirement account in determining his monthly child-support obligation.").

## B. ANALYSIS

Here, the trial court found that William's monthly net resources were $9,200.00 and calculated his child-support payment to be twenty-five percent of his net resources, as mandated by the Family Code, equaling $2,125.00 per month. *See* Tex. Fam. Code Ann. § 154.125(b). Without providing any applicable standard of review or discussing the evidence before the trial court, William argues that Amy "has produced no evidence sufficient to prove that [William] earns $9200 per

8

month . . . ." *See* Tex. R. App. P. 38.1(i).

William testified that his monthly income at the time of the final hearing was $4,500.00. William also testified that, in 2017, he had a 401k account with "probably" a balance of around $200,000.00 and an IRA with "probably" $100,000.00. A statement of the 401k account from June 11, 2018, shows a balance of $163,794.12. William stated that he liquidated the 401k account and the IRA, and that the money had been spent on living expenses and with his daughters since the filing of the divorce.

Furthermore, neither William nor Amy presented evidence of whether the withdrawals from the 401k or IRA accounts represented interest or dividends, a return of principal or capital, or some mix of the two. *See Harrison*, 2013 WL 485787, at *3 n.1. Therefore, we consider the withdrawals from the 401k and the IRA as part of William's net resources. *See id.*; *Koenig*, 2010 WL 1009170, at *4.

These sums total $300,000.00. Approximately fifty-seven months passed between the filing of the divorce and the date of the final hearing. Dividing the total sum by the number of months results in a monthly average of $5,263.15. *See Koenig*, 2010 WL 1009170, at *4. Once William's income from his current employer of $4,500.00 is added, the total increases to $9,763.15. Viewing this evidence in the light most favorable to the trial court's finding that William's monthly net resources are $9,200.00, we conclude that the evidence is legally sufficient. *See In re A.C.*, 560 S.W.3d at 630–31; *Koenig*, 2010 WL 1009170, at *4. Because there was legally sufficient evidence that William's monthly net resources are $9,200.00, we conclude that the trial court did not abuse its discretion when it ordered William to pay $2,125.00 per month in child support. *See* Tex. Fam. Code Ann. § 154.125(b).

We overrule William's second issue.

## V.    CONFIRMED ARREARAGES

In his third issue, William argues that the trial court abused its discretion when it confirmed $61,625.00 in child support arrearages because he had been supporting the children throughout the parties' separation.

### A.    APPLICABLE LAW

"The trial court in an enforcement action is to confirm the amount of arrearages as a finding of fact." *Ochsner v. Ochsner*, 517 S.W.3d 717, 72 (Tex. 2016). "Nothing in the statute suggests that the trial court can consider only payments made through the registry in determining the amount of child support that an obligor has paid, and thus the amount for which the obligor is in arrears." *Id.* "Rather, the statute contemplates that the trial court has discretion to consider direct payments either to the other parent or to a third party in deciding whether an arrearage exists." *Id.*

Under Family Code § 157.263, the trial court's duty to confirm an arrearage arises only after the movant has first met the burden of proving not just the existence of a child-support obligation, but of an arrearage. Tex. Fam. Code Ann. § 157.263(a). An arrearage in the context of a child-support enforcement action occurs when an obligor has failed to satisfy his child-support obligation. *Ochsner*, 517 S.W.3d at 720. "In calculating child-support arrearages, the trial court's discretion is very limited." *Chenault v. Banks,* 296 S.W.3d 186, 189 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The trial court has no discretion to forgive or decrease a past child-support obligation, *In re A.L.S.*, 338 S.W.3d 59, 65–66 (Tex. App.—Houston [14th Dist.] 2011, pet. denied), and its calculation of child-support arrearages must be based on the evidence of payment; not on an assessment of what is fair or reasonable. *White v. White*, No. 03-21-00323-CV, 2022 WL 2542004, at *2 (Tex. App.—Austin July 8, 2022, no pet.) (mem. op.).

**B. ANALYSIS**

Here, the trial court found that William's child support obligation was $2,150.00 per month beginning when Amy filed her petition for divorce on July 20, 2017, until January 1, 2020. During this period there were twenty-nine months; thus, William's total child support obligation for that period was $61,625.00.

William testified that he paid Amy certain lump sums towards child support during this period, totaling $9,000.00. Likewise, Amy testified that William paid her child support during that period in two lump payments of $5,000.00 and $4,000.00. Because it is undisputed that William paid Amy $9,000.00 towards his child support obligation during this period, we conclude that the trial court abused its discretion when it confirmed William's arrearage at $61,625.00. *See Ochsner*, 517 S.W.3d at 731 ("A trial court does . . . abuse its discretion when its decision is contrary to the only permissible view of the evidence."). The evidence supports only the conclusion that William failed to pay $52,625.00 during this period in child support. Accordingly, we reverse the trial court's determination of child-support arrearage totaling $61,625.00 and render judgment that William's confirmed arrearage is $52,625.00. *See id.*; *McCain v. McCain*, 636 S.W.3d 679, 692 (Tex. App.—Austin 2011, no pet.).

We sustain William's third issue.

## VI.  CONCLUSION

We reverse in part the trial court's determination of William's child-support arrearage totaling $61,625.00 for the period between July 20, 2017, and January 1, 2020, and we render judgment that the arrearage is $52,625.00. We affirm the remainder of the judgment.


/s/     Margaret "Meg" Poissant
Justice


Panel consists of Justices Wise, Zimmerer, and Poissant.